RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0334p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee*,

                                                    No. 10-3273

          *v.*

RAMONE ANDERSON,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 08-00018-001—Michael R. Barrett, District Judge.

Argued: October 6, 2011

Decided and Filed: September 13, 2012

Before: CLAY, GIBBONS, and WHITE, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant. Segev Phillips, UNITED STATES ATTORNEY'S OFFICE, Columbus, Ohio, for Appellee. **ON BRIEF:** Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant. Segev Phillips, UNITED STATES ATTORNEY'S OFFICE, Columbus, Ohio, for Appellee.

     GIBBONS, J., delivered the opinion of the court in which CLAY, J., joined, and WHITE, J., joined except with respect to Part VII. WHITE, J. (pp. 18–22), delivered a separate concurring opinion.

———————————

**OPINION**

———————————

     JULIA SMITH GIBBONS, Circuit Judge. Ramone Anderson was convicted of unlawful possession of a firearm by a felon who had previously been convicted of at least three prior violent felonies, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). He

1

was sentenced to 293 months of imprisonment. Anderson now appeals both his conviction and sentence. For the reasons set forth below, we affirm.

## I.

In the early morning hours of October 11, 2007, Anderson was involved in an altercation in and outside of a bar in Cincinnati. The altercation escalated and Anderson discharged a firearm. In response to the shooting, Cincinnati police issued a broadcast for a white sedan with license plates that were registered in Anderson's name, spotted Anderson's vehicle, and pulled him over. However, after the officers commanded Anderson to turn off his vehicle and put his hands in the air, Anderson sped off. The officers immediately pursued him. While fleeing, Anderson lost control of his vehicle, crashed through a fence, and drove down an embankment. Anderson then attempted to flee on foot and the officers pursued him. After a brief chase, Anderson was apprehended. He was read his *Miranda* rights at the scene. Officers then found a loaded handgun ten feet away from the passenger's side of Anderson's car.

At the police station, Anderson initialed and signed a notification of rights form, stating that he understood his *Miranda* rights, including his right to remain silent. Anderson then made a recorded statement in which he admitted to possessing the firearm. He also admitted to discharging the firearm, but claimed he had done so in self-defense.

On February 21, 2008, a grand jury returned a single-count indictment against Anderson for being a felon in possession of a firearm who had already been convicted of at least three prior violent felonies, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Anderson proceeded to trial and was convicted on November 5, 2009.

Anderson's Presentence Investigation Report ("PSR") calculated his final offense level to be 33, noting that under § 4B1.4(a) of the Sentencing Guidelines, a defendant who is subject to the enhanced sentence provisions of 18 U.S.C. § 924(e) is an armed career criminal. The trial judge, in line with the recommendations of the PSR, found that

Anderson was an armed career criminal and sentenced him to 293 months' imprisonment plus a term of supervised release.

Anderson now appeals both his conviction and sentence.  The district court had subject matter jurisdiction over this federal criminal prosecution pursuant to 18 U.S.C. § 3231.  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II.

Anderson first argues that the district court improperly denied his motion to suppress the statement he made at the police station.  When reviewing a trial court's decision on a motion to suppress, we review the trial court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Howard*, 621 F.3d 433, 450 (6th Cir. 2010).  Factual findings are viewed in the light most favorable to the prevailing party in the district court—here, the government.  *Id.* (citing *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010)).

To be valid, a *Miranda* waiver must be both knowing and voluntary.  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  In other words, the waiver must be both "the product of a free and deliberate choice rather than intimidation, coercion, or deception" and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  *Id.*  "The relevant question is not whether the 'criminal suspect knew and understood every possible consequence of a waiver of the Fifth Amendment privilege,' but rather whether the 'suspect knew that he could choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time.'"  *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009) (*en banc*) (quoting *Colorado v. Spring*, 479 U.S. 564, 574 (1987)) (internal alterations omitted).  This court looks to the "conduct, speech, and appearance" of the accused "during, and leading up to, the interrogation" to determine whether a *Miranda* waiver was knowing and voluntary.  *Id.* at 265.

Police officers advised Anderson of his *Miranda* rights twice, once at the scene of the arrest and again at the police station.  At the station, Anderson initialed a "Notification of Rights" form after each right he agreed to waive, and then signed the bottom of the form.  Despite this express waiver, Anderson argues that his mental and physical condition at the time of his arrest prevented him from making a voluntary waiver.  Anderson concedes that low intelligence alone does not render a *Miranda* waiver invalid, *Garner*, 557 F.3d at 264–65, but argues, that when coupled with an injury to his head, his waiver was neither knowing nor voluntary.

The facts in the record do not support Anderson's claim.  At trial, the arresting officer testified that Anderson "was out of breath.  He had a scratch on his face. But other than that, he was coherent."  The officer who interviewed Anderson drew a similar conclusion, stating that Anderson appeared to understand his rights and that he did not appear traumatized or incoherent.  The officers did state that Anderson had a swollen bump on his head.  But when Anderson was asked if he needed medical treatment upon entering the police station, he responded that he did not.  Further, while giving his statement, Anderson did not complain of his head injury, did not ask for medical treatment, and did not give any indication that his injury was affecting his ability to understand. Anderson's apparent comprehension of the events transpiring around him, as well as his refusal to seek medical treatment, convinces us that the trial court did not err in concluding that his "conduct, speech, and appearance at the time of interrogation indicated that his waiver was knowing and intelligent."  *See Garner*, 557 F.3d at 265.

**III.**

Anderson next asserts that the district court erred in ordering a competency evaluation to determine whether he was fit to stand trial.  "We review, under an abuse of discretion standard, a district court's determination whether there is 'reasonable cause' to believe that a defendant is incompetent, and thus whether to hold a competency hearing."  *United States v. Jones*, 495 F.3d 274, 277 (6th Cir. 2007).

There is no indication that the trial judge abused his discretion in ordering a competency hearing.  The trial judge was presented with an unopposed motion filed by

Anderson's counsel which stated that Anderson had reported "a history of mental illness and/or defects of the mind."[1]  At the hearing on the motion to determine competency, counsel for Anderson repeated that Anderson had told him of his history of mental health issues.  The trial judge's decision to grant the motion for a competency determination was ultimately precautionary, in order to protect the interests of Anderson.  Further, the only effect of conducting a competency evaluation was to delay the start of his trial; it had absolutely no effect on either his conviction or sentence.  Therefore, the trial judge did not abuse his discretion by ordering a competency evaluation.

## IV.

Anderson further contends that his waiver of his right to testify was not voluntary.  Anderson did not raise this issue in the district court; thus, we review for plain error.  *United States v. Williams*, 612 F.3d 500, 514 (6th Cir. 2010).  To establish plain error, Anderson must show (1) an error (2) that is plain (3) that affects his substantial rights and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings.  *United States v. Olano*, 507 U.S. 725, 732 (1993); *United States v. Hunter*, 558 F.3d 495, 501 (6th Cir. 2009).

A criminal defendant has a constitutional right to testify and any waiver of this right must be knowing and voluntary.  *Goff v. Bagley*, 601 F.3d 445, 471 (6th Cir. 2010).  However, "'[b]arring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record.'"  *Id.* (quoting *United States v. Webber*, 208 F.3d 545, 550–51 (6th Cir. 2000)).  Because Anderson did not manifest disagreement with his counsel regarding the decision not to testify, the district court had no affirmative duty to engage Anderson on the subject.

---

[1] Although Anderson's attorney initially requested the competency evaluation, Anderson expressed opposition to being evaluated at the competency hearing.

Although the trial judge was not obligated to address Anderson regarding his decision, he did so anyway. After Anderson's counsel told the judge that he had informed Anderson of his right to testify and that together they had decided that Anderson would not testify, the trial judge nonetheless engaged Anderson to confirm that decision. The trial judge told Anderson, "All right. Well, you certainly have the right not to testify. All right?" Anderson responded, "Yes, your honor." Anderson argues that since the trial judge decided briefly to engage him, he had a duty to ensure that Anderson's waiver was knowing and voluntary. Anderson does not cite authority for this proposition. In fact, precedent is against him. *See United States v. Yono*, 605 F.3d 425, 426 (6th Cir. 2010) (holding that a defendant has no right to have the district court develop a record to establish the voluntariness of his decision *to* testify). Ironically, Anderson urges a rule that would actually disfavor criminal defendants by tending to discourage judges from conducting any inquiry at all of a silent defendant. Here, though under no obligation to do so, the trial judge sought briefly to confirm Anderson's decision to waive his constitutional right to testify.

We therefore find that Anderson's waiver of his right to testify was knowing and voluntary.

## V.

Anderson next argues that he was tried in violation of the Speedy Trial Act, 18 U.S.C. § 3161. We review *de novo* the district court's interpretation of the Speedy Trial Act and its factual findings for clear error. *United States v. Marks*, 209 F.3d 577, 586 (6th Cir. 2000).

The Speedy Trial Act provides that, in any case in which the defendant enters a plea of not guilty, the defendant must be tried within seventy non-excludable days from when the indictment is filed or when the defendant first appears in court on the charge, whichever is later. 18 U.S.C. § 3161(c)(1). If the defendant is not brought to trial within seventy non-excludable days, the indictment on which he is charged "shall be dismissed

on motion of the defendant."  18 U.S.C. § 3162(a)(2).  A defendant who fails to move for dismissal prior to trial waives his right to dismiss on Speedy Trial Act grounds.  *Id.*[2]

Anderson claims that seventy-eight days elapsed before he was brought to trial. The parties agree that the speedy trial clock began to run when Anderson first appeared in court on April 10, 2008.  The parties also agree that the clock ran until May 6, 2008, when Anderson first filed a motion to suppress.  The trial court denied Anderson's motion to suppress on July 15, 2008.  Typically, when a motion to suppress is ruled upon, the speedy trial clock begins to run again, and Anderson claims that it did in his case.  However, on June 17, 2008, prior to the disposition of the motion to suppress and on Anderson's request, the trial judge ordered a continuance on grounds that "the ends of justice served outweigh the best interest of the public and the defendant in a speedy trial."  Based on this "ends-of-justice" finding, the court excluded all of the time until August 11, 2008, the date initially set for trial.  *See United States v. Stewart*, 628 F.3d 246, 253 (6th Cir. 2010) ("Delays due to continuances granted by the court are excluded from the time within which a trial must start under the Speedy Trial Act if the 'ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.'" (quoting 18 U.S.C. § 3161(h)(7)(A))).

The tolling of the speedy trial clock from June 17, 2008 until August 11, 2008 ultimately dooms Anderson's claim.  Anderson erroneously asserts that the clock began to run again on July 15, 2008, when his motion to suppress was denied, and he therefore adds nineteen days to the speedy trial clock (between July 15 and August 4, the date of the pretrial conference).  By adding these nineteen days, Anderson arrives at a total of seventy-eight days.  But as the government correctly asserts, all of the days from June 17 until August 11 are excludable.  The trial court excluded this period after explicitly finding that the ends of justice were served by granting the continuance. Moreover,

---

[2]The government argues that Anderson waived his rights under the Speedy Trial Act by never moving to dismiss.  Anderson did, however, make some effort to assert his speedy trial rights.  In any event, we need not decide this waiver issue because Anderson errs in his calculation of the number of non-excludable days that elapsed prior to trial.

Anderson signed a speedy trial waiver on June 17. Discounting this period of nineteen days, Anderson's trial occurred well within the limit of seventy non-excludable days.[3]

Anderson also argues that his waivers of his speedy trial rights were ineffectual. But he points to no evidence that his waivers were not informed or were based on a lack of proper findings. When waiving his speedy trial rights, Anderson signed acknowledgments or otherwise indicated that he voluntarily waived his speedy trial rights. On many occasions, Anderson himself sought the continuances. At times they were occasioned by his request for new counsel, or accompanied by the trial judge's finding that the "interests of justice" justified tolling the speedy trial clock. Under these circumstances, there is no indication that Anderson's waivers were ineffectual or based on insufficient grounds.

Accordingly, the trial court did not violate Anderson's rights under the Speedy Trial Act.

**VI.**

Anderson also makes two claims regarding the Armed Career Criminal Act ("ACCA"), which provides that a defendant convicted under the felon-in-possession-of-a-firearm statute, 18 U.S.C. § 922(g), who has three previous convictions for violent felonies or serious drug offenses, must be sentenced to a minimum of fifteen years of imprisonment. 18 U.S.C. § 924(e). His first contention regarding the ACCA is that his previous convictions should be treated as an element of the offense, rather than a sentencing enhancement, and thus must be proven to a jury beyond a reasonable doubt. This court views such challenges as constitutional in nature, triggering *de novo* review. *United States v. Crowell*, 493 F.3d 744, 749 (6th Cir. 2007).

---

[3] Anderson's trial did not actually start until April 30, 2010, after the competency evaluation, another change in counsel, and a series of waivers. But Anderson's claim that his speedy trial rights were violated is based upon the nineteen days prior to August 11, 2008 that he erroneously includes in his calculation. Therefore, we need not continue the calculation of excludable versus non-excludable days beyond August 11, 2008.

This claim is squarely foreclosed by our precedent. While "judge-found sentencing factors cannot increase the maximum sentence a defendant might otherwise receive based purely on the facts found by the jury," *United States v. O'Brien*, 130 S. Ct. 2169, 2175 (2010), there is an important exception to this rule: "a judge is permitted to find, based on the preponderance of the evidence, the fact of a prior conviction." *United States v. Martin*, 526 F.3d 926, 941 (6th Cir. 2008) (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 235 (1998)). In line with this exception, dubbed the *Almendarez-Torres* exception, previous convictions under the ACCA are treated as sentence enhancements, not offense elements. *United States v. McMurray*, 653 F.3d 367, 371 (6th Cir. 2011) ("That the ACCA is a sentence enhancement rather than a separate offense is well established."). Contrary to Anderson's assertions, *Almendarez-Torres* is still good law and will remain so until the Supreme Court explicitly overrules it. *Id.* ("[T]his court remains bound by *Almendarez-Torres* . . . .").

Anderson's attempt to analogize to *O'Brien*, 130 S. Ct. at 2180, where the Supreme Court held that the question of firearm type under 18 U.S.C. § 924(c) was an offense element rather than a sentencing factor, is also unavailing. *O'Brien* did not confront the question whether prior convictions should continue to be considered sentencing factors under the ACCA, and the majority opinion made no suggestion that *Almendarez-Torres* had been overruled. Indeed, the Court even noted that "recidivist provisions . . . are typically sentencing factors." *Id.*

Anderson also argues that Congress intended prior convictions to be elements of the crime, applying some of the factors used to determine Congressional intent that the Court set forth in *Castillo v. United States*, 530 U.S. 120, 124–31 (2000), and re-applied in *O'Brien*, 130 S. Ct. at 2175–80. However, it is not necessary to consider the *Castillo* factors here. The Court has generally considered Congressional intent regarding the ACCA only in borderline cases, such as whether a type of firearm is an offense element or when Congress has amended pertinent statutory language. *E.g.*, *Castillo*, 530 U.S. at 123–24; *O'Brien*, 130 S.Ct. at 2175–80. Anderson presents no such borderline case. As *Almendarez-Torres* explicitly held, "prior commission of a serious crime . . . is as typical

a sentencing factor as one might imagine." 523 U.S. at 230. Further, Anderson cites no recent statutory change that might prompt a closer analysis of Congressional intent. Thus, we need not embark upon a searching analysis of Congressional intent in 18 U.S.C. § 924(e), especially given our unbroken precedent of treating prior convictions as sentencing factors. *See McMurray*, 653 F.3d at 371; *Martin*, 526 F.3d at 941–42; *United States v. Burgin*, 388 F.3d 177, 183–87 (6th Cir. 2004).

## VII.

Anderson's second claim with respect to the ACCA is that the government failed to prove that he was convicted of three prior violent felonies that would qualify under the ACCA. We generally review *de novo* a district court's determination that a prior conviction qualifies as a "violent felony" under the ACCA, *United States v. Benton*, 639 F.3d 723, 729 (6th Cir. 2011), but because Anderson failed to object to the application of the ACCA before the district court, we review for plain error. *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (*en banc*).

Under the ACCA, a "violent felony" is "any crime punishable by imprisonment for a term exceeding one year" that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). In determining whether a prior conviction qualifies as a "violent felony," this court applies a "categorical approach" and examines "the statutory definition of the offense and not the particular facts underlying the conviction." *United States v. Gibbs*, 626 F.3d 344, 352 (6th Cir. 2010). If it is possible to violate the statute in a way that would constitute a violent felony and in a way that would not, a "court may consider the indictment, guilty plea, or similar documents to determine whether they necessarily establish the nature of the prior conviction." *Id.* (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)).

Anderson's indictment listed the following prior convictions, all in the Ohio Court of Common Pleas, as qualifying felonies under the ACCA: (1) aggravated assault;

(2) felonious assault with firearm specification and having weapons under disability; (3) robbery; and (4) trafficking in cocaine and trafficking in marijuana.  Anderson does not challenge the designation of his robbery conviction as a violent felony within the meaning of the ACCA, and the Government has conceded that Anderson's drug trafficking conviction cannot be considered a predicate felony under the ACCA.  Thus, the question is whether Anderson's aggravated assault and felonious assault convictions qualify as violent felonies within the meaning of § 924(e)(2)(B).

**A.**

We first analyze Anderson's conviction for aggravated assault to determine if it is categorically violent based on the statutory definition of the crime.  *See Gibbs*, 626 F.3d at 352.  Under Ohio law, aggravated assault is committed when a person

> while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force . . . knowingly:   (1) [c]ause[s] serious physical harm to another . . ." [or] (2) [c]ause[s] or attempt[s] to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance . . . .

Ohio Rev. Code Ann. § 2903.12(A).  We must determine whether, based on this definition, aggravated assault falls into either 18 U.S.C. § 924(e)(2)(B)(i) or (ii).  Either would be sufficient to classify Anderson's conviction as a "violent felony" under the ACCA.

We find that aggravated assault in Ohio is a "violent felony" under § 924(e)(2)(B)(i) because it "has as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i).   The Supreme Court has clarified that "physical force" as used in § 924(e)(2)(B)(i) means "*violent* force—that is, force capable of causing physical pain or injury to another person," and not mere unwanted touching, which would be incapable of causing such physical pain or injury. *Johnson v. United States*, 130 S. Ct. 1265, 1270–72 (2010). We think it is clear that the Ohio aggravated assault statute, which requires proof of "serious physical harm" or "physical harm . . . by means of a deadly weapon or dangerous

ordnance," Ohio Rev. Code § 2903.12(A)(1)–(2), necessarily requires proof that the defendant used "force capable of causing physical pain or injury." We hold that one can "knowingly . . . [c]ause serious physical harm to another," Ohio Rev. Code § 2903.12(A)(1), only by knowingly using force capable of causing physical pain or injury, *i.e.*, violent physical force, in the context of determining what crime constitutes a "violent felony" under § 924(e)(2)(B)(i).

Some of our sister circuits have embraced similar reasoning.[4] In *De Leon Castellanos v. Holder*, 652 F.3d 762, 764 (7th Cir. 2011), the defendant argued that his domestic battery conviction under Illinois law was not a categorical crime of violence because "the use, attempted use, or threatened use of physical force" was not an element of the crime and serious bodily harm could also result from nonviolent "'intellectual force' like guile or deception."[5] *Id.* at 766 (utilizing the example of poisoning a victim). The Seventh Circuit, citing *Johnson*, disagreed. It held that "[b]attery causing bodily harm entails physical force because some sort of physical pain or damage to the body . . . is required to convict." *Id.* (internal quotation marks omitted). The court explained that a defendant's deceit or fraud on the will of a victim which causes serious bodily injury is "equivalent" to the use of force. *Id.* at 766–67 (citing cases). Moreover, the court emphasized that "[t]he degree of injury has a 'logical relation to the use of physical force' . . . ." *Id.* at 766; *see Hill v. Werlinger*, No. 11-1533, ___ F.3d ___, 2012 WL 3573364, at *5 (7th Cir. Aug. 21, 2012) (citing *Johnson* and finding that the first prong of the Illinois battery statute was a violent felony under § 924(e)(2)(B)(i) because the statute required proof that the defendant "knowingly or intentionally without legal justification...cause[d] bodily harm," even though it did not include physical force as a

---

[4] The contrary authorities cited by the concurring opinion predate *Johnson* and are thus of limited relevance.

[5] Although the Seventh Circuit, in *De Leon Castellanos* considered whether a conviction was a "crime of violence" under 18 U.S.C. § 16(a), the definition of a "crime of violence" under 18 U.S.C. § 16(a) is almost identical to the definition of a "violent felony" under § 924(e)(2)(B)(i). *United States v. Mahone*, 662 F.3d 651, 653 n.3 (3d Cir. 2011); *Szucz-Toldy v. Gonzales*, 400 F.3d 978, 981 (7th Cir. 2005) (noting parenthetically that the two statutes are "nearly identical"). Thus, authority interpreting the former can be applied to interpret the latter. *Mahone*, 662 F.3d at 653 n.3.; *see Gibbs*, 626 F.3d at 352 n.6 ("We determine a 'crime of violence' under the Guidelines in the same way as a 'violent felony' under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), because both share essentially the same definitions.").

stand-alone element); *United States v. Horton*, 461 F. App'x 179, 184 (3d Cir. 2012) (citing *Johnson* and finding that the New Jersey third-degree aggravated assault statute was a crime of violence under U.S.S.G. § 4B1.2(a)(1), which employs the same language as § 924(e)(2)(B)(i), because the statute required proof that the defendant "knowingly cause[d] bodily injury to another," even though it did not include physical force as a stand-alone element).  We find this analysis persuasive.

This court has also implicitly adopted this reasoning.  In *United States v. Gloss* we held that, when analyzing the crime of facilitation of robbery under Tennessee law, "[a]ny robbery accomplished with a real or disguised deadly weapon, or that causes serious bodily injury, falls under the first clause of the definition of violent felony, as it necessarily involves 'the use, attempted use, or threatened use of physical force against the person of another.'"  661 F.3d 317, 319 (6th Cir. 2011).  Thus, we now explicitly hold that it does not matter that the Ohio statute at issue does not contain a stand-alone physical force element because proof of serious physical injury or pain under the statute necessarily requires proof of violent physical force.

Admittedly, our holding is in some tension with dicta in *United States v. McMurray*, which stated that, when analyzing the Tennessee aggravated assault statute, "[a]lthough we might expect that someone who causes serious bodily injury to another did so with a strong physical force, the statute does not require it."  653 F.3d 367, 375 n.6. (6th Cir. 2011).  This statement, contained in a footnote, is clearly dicta and therefore not binding upon subsequent panels.  *See Williams v. Anderson*, 460 F.3d 789, 811 (6th Cir. 2006).  In any case, *McMurray*'s dicta is unworkable.  We therefore decline to follow it.

In sum, because the Ohio aggravated assault statute requires the state to show the defendant either knowingly caused serious physical harm to another or knowingly

caused physical harm to another by means of a deadly weapon or ordnance, a conviction under that statute is a "violent felony" under § 924(e)(2)(B)(i).[6]

**B.**

We must also consider Anderson's felonious assault conviction. Ohio's felonious assault statute prohibits the following conduct:

> (A) No person shall knowingly do either of the following:
> > (1) Cause serious physical harm to another or to another's unborn;
> > (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.
>
> (B) No person, with knowledge that the person has tested positive as a carrier of a virus that causes acquired immunodeficiency syndrome, shall knowingly do any of the following:
> > (1) Engage in sexual conduct with another person without disclosing that knowledge to the other person prior to engaging in the sexual conduct;
> > (2) Engage in sexual conduct with a person whom the offender knows or has reasonable cause to believe lacks the mental capacity to appreciate the significance of the knowledge that the offender has tested positive as a carrier of a virus that causes acquired immunodeficiency syndrome;
> > (3) Engage in sexual conduct with a person under eighteen years of age who is not the spouse of the offender.

Ohio Rev. Code Ann. § 2903.11.

Subsection A of the felonious assault statute is identical to the Ohio aggravated assault statute, minus the mitigating element of provocation. *State v. Deem*, 533 N.E.2d

---

[6]Having so held, we need not reach Anderson's argument that the statute's *mens rea* requirement of "knowingly" instead of "purposeful" falls short of the requirements set forth in *Begay v. United States*, 553 U.S. 137, 144–45 (2008). *Begay* clarified the meaning of § 924(e)(2)(B)(ii), but "sa[id] nothing about" § 924(e)(2)(B)(i)—the clause on which our holding rests. *See Gloss*, 661 F.3d at 320.

294, 299 (Ohio 1988). Therefore, because we have held, *see* Part VII.A, *supra*, that a conviction under the Ohio aggravated assault statute qualifies as a violent felony under 18 U.S.C. § 924(e)(2)(B)(i), the same must follow for subsection A of the felonious assault statute. We accordingly hold that a conviction under Ohio RevisedCode § 2903.11(A) qualifies as a violent felony under 18 U.S.C. § 924(e)(2)(B)(i).

Nonetheless, Anderson briefly contended at oral argument that the documents before the district court did not necessarily establish the nature of his prior felonious assault conviction as required by *Shepard*, 544 U.S. at 26. Where it is possible to violate a statute in a way that would constitute a violent felony and in a way that would not, we "consider the indictment, guilty plea, or similar documents to determine whether they necessarily establish the nature of the prior conviction." *Gibbs*, 626 F.3d at 352. Although subsection A of the felonious assault statute qualifies as a violent felony, subsection B, which prohibits persons who know that they have HIV or AIDS from engaging in sexual conduct under certain circumstances, does not readily qualify as a violent felony. Anderson argued at oral argument that because it would be possible to violate the Ohio felonious assault statute in a way that would constitute a violent felony and in a way that would not, resort to *Shepard*-approved documents is required to establish the nature of the prior conviction.

However, Anderson did not raise this *Shepard* argument in his initial appellate brief. Indeed, he proceeded in his brief as though he was convicted under subsection A of the statute. (*See* Appellant's Br. at 14–15.) Rather, it was the government that, preemptively, briefed this issue and responded to it. Moreover, Anderson did not file a reply to the government's brief in which he could have addressed the *Shepard* issue, and he only touched briefly upon the issue at oral argument. Accordingly, Anderson has waived this argument on appeal. *See Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 462 (6th Cir. 2003) ("An appellant waives an issue when he fails to present it in his initial briefs before this court."); *Thaddeus-X v. Blatter*, 175 F.3d 378, 403 n.18 (6th Cir. 1999) (*en banc*) ("We do not address defendants' belated argument . . . [because] [i]t was not presented to this court in the initial briefs on appeal and is therefore waived.").

Therefore, we find that Anderson's felonious assault conviction was a violent felony under the ACCA.

**VIII.**

Anderson finally claims that his sentence of 293 months was substantively unreasonable. Challenges to the reasonableness of a sentence are reviewed under an abuse of discretion standard. *Gibbs*, 626 F.3d at 348. When the sentence is within the range suggested by the Guidelines—as is the case here—we may apply a rebuttable presumption of substantive reasonableness. *United States v. Petrus*, 588 F.3d 347, 353 (6th Cir. 2009).

Anderson cannot overcome this presumption of reasonableness. He first argues that his sentence of 293 months—within, but at the top of, the Guidelines—was unreasonable because he only possessed the firearm out of necessity. Anderson raised this necessity defense at trial and the trial judge gave the jury a necessity instruction. Nonetheless, the jury was unconvinced and convicted Anderson. In light of the jury's rejection of this defense, and in light of Anderson's lengthy criminal history, it was not unreasonable for the trial judge to sentence Anderson to the top of the Guidelines' range.

Anderson also argues that several mitigating factors, including low intelligence, early drug use, and an unhealthy and unstable upbringing, weigh in favor of a more lenient sentence. Yet the judge specifically considered multiple § 3553(a) factors when determining Anderson's sentence. The judge considered the nature of the offense, Anderson's extensive criminal history, the fact that Anderson committed the offense shortly after his release from prison, and the need to protect the public. As the judge explained to Anderson, "I think you're going to hurt someone in jail, and I think you're going to hurt somebody when you get out of jail." Given these considerations, Anderson has failed to rebut the presumption of reasonableness of his sentence.

**IX.**

For the foregoing reasons, we affirm Anderson's conviction and sentence.

---

**CONCURRENCE**

---

HELENE N. WHITE, Circuit Judge, concurring.  I join in the majority opinion except with respect to Part VII.

Although I agree with the majority that Ohio's aggravated assault and felonious assault (section (A)) offenses are violent felonies under the Armed Career Criminal Act (ACCA), I write separately because I do not agree that proof of serious physical harm necessarily requires proof that violent physical force was used.  Nevertheless, because the offenses fall within the scope of the ACCA's residual clause, I concur.

In order for a felony conviction to be classified as "violent" under the ACCA the offense must either:

> (i) ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) [be] burglary, arson, or extortion, involve[] [the] use of explosives, or otherwise involve[] conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

To satisfy the first prong of the ACCA (the force prong), the use, threatened use or attempted use of physical force must be an element of the offense.  If any set of facts supports a conviction without proof of force, then force cannot be an "element—implicit or explicit—of the crime."  *See United States v. Vargas-Duran*, 356 F.3d 598, 605 (5th Cir. 2004) (en banc).

In *Johnson v. United States*, 130 S. Ct. 1265 (2010), the Supreme Court explained the type of force necessary to satisfy the ACCA's force prong:

> The adjective "physical" is clear . . .  It plainly refers to force exerted by and through concrete bodies—distinguishing physical force from, for example, intellectual force or emotional force.  It is the noun that poses the difficulty; "force" has a number of meanings . . . .  In more general

> usage it means "[s]trength or energy; active power; vigor; often an unusual degree of strength or energy," [p]ower to affect strongly in physical relations," or "[p]ower, violence, compulsion, or constraint exerted upon a person."
>
> . . . .
> We think it is clear that in the context of a statutory definition of "*violent* felony," the phrase "physical force" means *violent* force—that is, force capable of causing physical pain or injury to another person.

*Id.* at 1270-71 (internal citations omitted).

The *Johnson* Court's interpretation of "physical force" is a narrow one. First, the Court points out that the force at issue must be "physical." Next, the Court emphasizes that the physical force used must be of a certain degree and "capable of causing physical pain or injury to another person."

The majority concludes that when one has knowingly caused serious physical harm to another (the relevant element of the Ohio offenses), one necessarily has used force capable of causing physical pain or injury. Maj. Op. at 11. To be sure, serious physical injury most often results from physical force, but it can also occur in the absence of any force being used by the offender. For example, a person who surreptitiously poisons another, or removes the brakes from another's car, causing serious physical injury would be guilty of the assault offenses at issue here. However, in both examples, the offense can be committed without ever coming into contact with the victim. Likewise, a parent who continues to feed his or her child a steady diet of junk food until the child suffers the heart damage that doctors promised has also knowingly caused serious physical harm without the use of violent physical force. In these examples, although the ultimate injury to the victim may involve violent force of some type, the offense itself would not involve the use, attempted use or threatened use of physical force.

The majority cites the Seventh Circuit's decision in *De Leon Castellanos v. Holder*, 652 F3d. 762 (7th Cir. 2011), in support of its holding. Maj. Op. at 12. In *De Leon Castellanos*, the defendant argued that "the use, attempted use, or threatened use

of physical force," was not an element of domestic battery in Illinois, which only required proof that the defendant "intentionally caus[ed] bodily harm to any family or household member." *Id.* at 763 (citing 720 Ill. Comp. Stat. § 5/12-3.2(a)(1)). The defendant claimed that serious bodily harm could result from non-physical acts, such as poison through deception. In rejecting this argument, the Seventh Circuit held that "causing bodily harm entails physical force because some *sort of* physical pain or damage to the body . . . is required to convict." 652 F.3d 762, 764 (7th Cir. 2011) (emphasis added). To support its position that non-physical acts such as deception are equivalent to "force," the court relied on state court decisions issued between 1873 and 1940, *id.* at 766-67, for example, *Commonwealth v. Gregory*, 1 A.2d 501 (Pa. Super. Ct. 1938), which held that tricking a patient to consent to a medical examination constituted the use of force. The *De Leon Castellanos* court never explained why battery committed through poison necessarily involves the use of violent force as contemplated by *Johnson*, except to cite cases holding that poisoning constitutes battery because fraud on the will of the victim is equivalent to force.[1] But, that is precisely the problem; these cases hold

---

[1]I quote the entirety of the *De Leon Castellanos* discussion of the issue:

De Leon argues that because bodily harm can result from "'intellectual force' like guile or deception," a bodily harm battery under section 5/12–3.2(a)(1) does not have as an element the use, threat, or attempted use of physical force. De Leon notes that a person could trick another into drinking poison and be found guilty of battery for causing bodily harm. Illinois courts have not had to consider whether guile or deception resulting in bodily harm is the equivalent of force; we note, however, that Illinois punishes poisoning in a separate statute. *See* 720 Ill. Comp. Stat. 5/12-4(c). Other courts have said that this kind of battery entails force:

> [A] battery is committed where one person administers a drug to another by inducing the other voluntarily to take the drug in the belief that he is taking some other substance, or by placing the drug in some otherwise harmless substance and inducing the other to take such substance without knowledge that it contains a drug. The deceit practiced in such a case by means of which the person is induced to take the drug, is a fraud on his will equivalent to force.

*Smith v. Smith*, 194 S.C. 247, 9 S.E.2d 584, 589-90 (1940); *see also Commonwealth v. Gregory*, 132 Pa. Super. 507, 1 A.2d 501, 505 (1938) (tricking patient to consent to medical examination was fraud on the will of the victim equivalent to force); *Carr v. State*, 135 Ind. 1, 34 N.E. 533, 534 (1893) (inducing victim to take explosives by misrepresenting their dangerousness is battery as defendant sets in motion that which causes injury); *Commonwealth v. Stratton*, 114 Mass. 303, 305-06 (1873) (same). We see no reason to think Illinois would treat the matter differently.

Accordingly, *Johnson* does not call into question our earlier decisions in *LaGuerre* and *Upton*, and we follow them here. De Leon's conviction of domestic battery for causing bodily harm to his wife is a crime of violence, and he is therefore ineligible for

that deception leading to serious injury constitutes battery even when the defendant uses a method that avoids the need to directly employ violent physical force.

At least two circuits have rejected such a broad interpretation of physical force. In *Vargas-Duran*, the Fifth Circuit sitting *en banc* held that "[t]here is . . . a difference between a defendant's causation of an injury and the defendant's use of force." 356 F.3d at 606. As a result, the statute at issue, intoxication assault, which required proof of serious bodily injury, but not proof of force, was held not to be a crime of violence under the force prong of section 2L1.2 of the Sentencing Guidelines.**[2]**

In *Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003), the Second Circuit addressed Connecticut's third-degree assault statute, which allows for conviction when a person: "(1) with intent to cause physical injury to another person . . . causes such injury to such person or to a third person[.]" *Id.* at 192 (citing Conn. Gen. Stat. § 53a-61(a)). The Court rejected the government's argument "that force is implicit in the statute's requirement of the intentional causation of physical injury," *id.* at 193, and found that "while there are undoubtedly many ways in which force could be used to commit third degree assault under Connecticut law, the plain language of the statute does not make use of force an explicit or implicit element of the crime," *id.* at 196.

The majority concludes these cases have limited relevance because they were decided before *Johnson*. Maj. Op. at 12 n.4. But *Johnson* only makes the holding in these cases stronger; nothing in these cases is inconsistent with *Johnson.* Nor does this Court's decision in *United States v. Gloss*, 661 F.3d 317 (6th Cir. 2011), support the majority's holding here. *Gloss*'s statement that "any robbery accomplished with a real or disguised deadly weapon, or that causes serious bodily injury, falls under the first clause of the definition of violent felony, as it necessarily involves 'the use, attempted use, or threatened use of physical force against the person of another'" *id*. at 319, must

---

cancellation of removal. The petition for review is DENIED.

**[2]** "Given the similarity between the ACCA's definition of "violent felony" and the definition of "crime of violence" contained in the pertinent Guidelines provision, courts, including this one, have taken the position that authority interpreting one phrase is generally persuasive when interpreting the other." *United States v. Vanhook*, 640 F.3d 706, 712 n.4 (6th Cir. 2011).

be understood in the context of the robbery offense, which requires the taking of property from the person of another by violence or putting in fear, Tenn. Code Ann. § 39-13-401.    "The 'fear' referred to in the statute is a 'fear of "bodily danger or impending peril to the person," which intimidates and promotes submission to the theft of the property.'"  *State v. Dotson*, 254 S.W.3d 378, 396 (quoting *State v. Bowles,* 52 S.W.3d 69, 80 (Tenn.2001)).  This taking from the person by use of violence or putting in fear of bodily danger or impending peril to the person, coupled with the use of a deadly weapon or serious bodily injury, necessarily involves the use or threatened use of violent force.

For these reasons, I cannot agree that the offenses at issue are violent felonies under the force prong of the ACAA.

Nonetheless, I agree that the offenses at issue are violent felonies under the ACCA's residual clause.  A conviction under Ohio's aggravated assault statute requires proof that a defendant knowingly "[c]ause[d] serious physical harm to another or to another's unborn" or "[c]ause[d] or attempt[ed] to cause physical harm to another or another's unborn by means of a deadly weapon or dangerous ordance." Ohio Rev. Code Ann. § 2903.12(A).  Such conduct indisputably presents a "serious potential risk of physical injury to another." *See* 18 U.S.C. § 924(e)(2)(B)(ii).  The same can be said of section A of Ohio's felonious-assault statute, which has identical language to the aggravated-assault statute but does not contain the mitigating element of provocation. *See State v. Deem*, 533 N.E.2d 294, 299 (Ohio 1988).  Further, these offenses involve the type of purposeful, violent and aggressive conduct required by *Begay v. United States,* 553 U.S. 137, 144-45 (2008).

Accordingly, I concur.