NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1251n.06

No. 12-3009

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Dec 04, 2012*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CHARLES L. IVEY, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY, COLE, and GIBBONS, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Defendant Charles Ivey pleaded guilty to a charge of being a felon in possession of a firearm and was sentenced, pursuant to 18 U.S.C. § 924(e)(1), to the mandatory minimum prison term of 180 months. In his plea agreement, however, he specifically reserved the right to appeal the district court's denial of his motion to suppress the firearm recovered from his person and any incriminatory statements he made to the police. We find no reversible error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

While Amherst, Ohio, police officers Joshua McCoy and Zackery Horning were sitting in their respective squad cars talking to each other after eating lunch together, McCoy observed, in the same parking area, a van that did not have an Ohio license plate

affixed to the front of the vehicle, a violation of state law.[1]  When the van pulled out onto a public street, first McCoy and then Horning gave pursuit, eventually activating their sirens and emergency lights and effectuating a stop of the van.  Both McCoy's and Horning's official vehicles were equipped so that once the officers activated their emergency lights, a dash-mounted video camera began recording any activity in front of the squad cars.  Most of the following facts, therefore, can be corroborated visually by reference to videos included in the appellate record.

While McCoy approached the driver's side of the van, Horning stood behind the van on the passenger side in order to observe the vehicle's occupants.  McCoy then began speaking with the van's driver but noticed that Ivey, the front-seat passenger, was not wearing his seatbelt, a violation of Amherst Municipal Ordinance 337.27(b).  McCoy thus also asked Ivey for his identification and, when he was unable to hear what Ivey was saying because of the noise of other traffic on the street, walked around to the passenger side of the van.  McCoy claimed that at that time he saw that Ivey "was looking straight ahead.  He was nervous.  His carotid artery was pounding.  He was sweating."  Nevertheless, Ivey provided valid identification to McCoy.  The officer returned to his squad car to run departmental record checks on the driver, on Ivey, and on a third individual who was in the rear seat of the van.  Because the backseat passenger was from Lorain, Ohio, and because Ivey also had once lived in Lorain, McCoy contacted the Lorain Police

---

[1]A valid license plate was later observed on the dashboard of the van, but McCoy claimed that the license plate was not clearly visible, as is required by Ohio law.  *See* Ohio Rev. Code § 4503.21.

Department directly to ascertain whether that jurisdiction had outstanding warrants on either individual.

Less than five minutes later, as McCoy waited for the completion of the computer records check and for an answer to his inquiry to Lorain authorities, Horning contacted his fellow officer on his police radio to report "that the front passenger [in the van] was moving around quite a bit, making movements, as if he is attempting to conceal something." Even though the record checks were not yet completed and McCoy had not yet determined whether to issue warnings or citations to the driver and to Ivey, McCoy again approached the front passenger side of the van and asked Ivey to "step out of the vehicle for [the two officers'] safety."

After the defendant got out of the van and walked to the rear of the vehicle, McCoy sought Ivey's acquiescence to a pat-down for weapons. The defendant inquired whether there was a warrant for his arrest, and when Ivey informed him that he merely wanted to pat him down for McCoy's own safety, Ivey, without warning, dashed away toward the opposite side of the street. Unfortunately, while fleeing, the defendant ran directly into the side of a car traveling in the opposite direction and fell to the ground. When Ivey began to get up to continue his escape, McCoy tackled him and "a Taurus 9 millimeter pistol came out of [the defendant's] waistband and onto the ground." Eventually, Ivey was subdued, handcuffed, and informed of his *Miranda* rights. McCoy then asked Ivey why he tried to flee. In response, Ivey stated simply, "Because I had a fucking gun."

Based upon those facts and Ivey's prior criminal record, the federal grand jury indicted Ivey for being a felon in possession of a firearm. The defendant filed a pretrial motion to suppress all evidence obtained from him and all statements made by him as a result of his interactions with McCoy and Horning. The district court conducted an evidentiary hearing on the motion and ultimately denied the motion to suppress in a written order, concluding that the initial stop of the van was legal, that the police possessed the authority to direct Ivey to get out of the vehicle, and that the defendant's flight provided the reasonable suspicion required to detain him and to recover the firearm that Ivey dropped during his scuffle with McCoy.

When his suppression motion was denied, Ivey entered a guilty plea to the felon-in-possession charge but explicitly reserved the right to challenge that denial on appeal. He now asserts that McCoy and Horning did not have the requisite reasonable suspicion of wrongdoing "to either extend the scope and duration of the traffic stop or to independently seize" him.

## DISCUSSION

We employ two different standards when reviewing a district court's denial of a motion to suppress evidence. We review a district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Anderson*, 695 F.3d 390, 394 (6th Cir. 2012).

We recently reaffirmed in *United States v. Stepp*, 680 F.3d 651, 661 (6th Cir. 2012), that "stopping and detaining a motorist constitutes a seizure within the meaning of the Fourth Amendment. Passengers . . . are also considered seized during a traffic stop." (Citations and internal quotation marks omitted.) Additionally, a reasonable investigative detention can be transformed into a Fourth Amendment violation by an "unreasonable extension of an otherwise lawful stop." *Id.* at 662.

In addressing Ivey's Fourth Amendment challenge, it is important to recognize what is *not* in dispute in this appeal. First, Ivey cannot and does not challenge the legality of the stop of the van and concedes that the traffic stop was justified by the officers' observation of the license-plate violation. *See, e.g.*, *Whren v. United States*, 517 U.S. 806, 813 (1996) (holding that an officer's subjective intent in stopping a vehicle is irrelevant if the stop is otherwise supported by probable cause that a traffic violation occurred). Furthermore, Ivey does not contest the actions undertaken by McCoy once he began to flee. In fact, the defendant admitted to the district court that his effort to run from the police after he was asked to leave the vehicle created reasonable suspicion for the police to conduct a pat-down of the defendant at that point. Thus, the only question that remains in dispute is whether it was appropriate for McCoy to ask Ivey to get out of the van in the first place and then to ask him to submit to a frisk of his person.

According to the defendant, McCoy's order that Ivey exit the van was, by itself, sufficient to extend unreasonably the scope and the duration of a traffic stop ostensibly

made for the sole purpose of investigating an improper display of a license plate.  In

*Maryland v. Wilson*, 519 U.S. 408, 415 (1997), however, the United States Supreme Court

held "that an officer making a traffic stop may order passengers to get out of the car

pending completion of the stop."  (Footnote omitted.)  Moreover, the officer is permitted to

ask questions completely unrelated to the reason for the initial detention as long as the

questions do not "measurably extend the duration of the stop."  *Arizona v. Johnson*, 555

U.S. 323, 333 (2009).  *See also United States v. Everett*, 601 F.3d 484, 492 (6th Cir. 2010)

(police may ask questions at a traffic stop during "dead time" while completing a task

related to the traffic violation).[2]

McCoy's directive to Ivey to get out of the van and his nearly contemporaneous

request to pat down the defendant for weapons did not measurably or unreasonably

extend the duration of the traffic stop for the license-plate violation.  McCoy's

uncontroverted testimony at the suppression hearing established that he had not yet

received the information necessary to complete his criminal-records search when he was

alerted by Horning, only minutes after the initial stop, that Ivey's actions merited immediate

attention.  After considering this and other testimony adduced at the evidentiary hearing

on the defendant's motion to suppress, the district court found McCoy's account of the

events surrounding the traffic stop and arrest to be credible.  Our review of that same

---

[2]Of course, a law enforcement officer may not simply delay the writing of a ticket, citation, or warning in order to propound questions to motorists and their passengers.  *Stepp*, 680 F.3d at 662.

testimony leads us to the inescapable conclusion that the district court's factual findings were not clearly erroneous.

## CONCLUSION

McCoy's request that the defendant exit the van during the traffic stop was not unreasonable under the Supreme Court's decision in *Wilson*. Furthermore, the single question propounded by McCoy to Ivey seeking permission for a pat-down while necessary information related to the traffic stop was still being obtained did not in any way extend the duration of the detention. Because Ivey's later flight from the officers created reasonable suspicion justifying further detention of the defendant, no Fourth Amendment violation occurred in this case. The district court thus properly denied Ivey's motion to suppress the firearm recovered from him and the statement he made to the officer admitting his possession of the weapon.

For these reasons, we AFFIRM the judgment of the district court.