**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0352n.06

Case No. 16-3900

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| | | **FILED** |
| | | Jun 21, 2017 |
| UNITED STATES OF AMERICA, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| ANTONIO TURNER, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: BOGGS, CLAY, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Antonio Turner sold two firearms to an undercover agent and informant, after which he pleaded guilty to possessing a firearm as a felon and selling firearms without a license. On appeal, he challenges two enhancements to his sentencing guidelines calculation, one for firearms trafficking and one for a prior crime of violence. Because the district court properly applied the guidelines, we affirm.

I.

In the summer of 2014, Gilberto Torres approached an informant working for the Bureau of Alcohol, Tobacco, and Firearms and offered to sell him a gun. The informant agreed to meet, bringing along Special Agent Lorena Martinez, who posed as a member of a trafficking organization operating in Chicago and "down South." After a successful sale, Torres introduced the undercover team to Juan Luis Hernandez, a self-proclaimed intermediary for underground

firearm sales. Hernandez, like Torres, sold the agents a handgun and offered to find them more. Not long after, Torres and Hernandez had a falling out. But the agents continued to work with Hernandez.

On July 31, 2014, the agents went to Hernandez's house for another firearm sale. The informant entered the house and found Antonio Turner inside. After exchanging greetings, Turner lifted his shirt to display a .380 caliber pistol. He then removed a second .40 caliber pistol from a nearby backpack and gave both guns to Hernandez, who placed them in the backpack and walked with the informant back to his car where the undercover agent was waiting.

Officers had wired the car with several recording devices. Once in the car, Hernandez told the agents that he had informed Turner that the agents could pay only $200. He then explained why he and Torres no longer worked together. Agent Martinez confirmed that this was fine and asked whether there was anything she needed to know about the guns, namely whether they were "clean" or "dirty." Hernandez replied that the guns he had that day were clean. The agents completed the transaction, purchasing both guns. After the sale, Hernandez told the informant that Turner had two more weapons to sell, and he would contact him once he received them.

On August 5, Hernandez sold the undercover team another one of Turner's guns. In complaining that the gun was old, Hernandez joked with the undercover agents that "when [he] told him 'dirty,' [he] didn't mean like some . . . old shit." R. 98-11 at 8. "You know, I told him 'dirty' like if you was grabbing somebody, you shot somebody." *Id.* This "dirty" gun, unlike the others, had an obliterated serial number.

Agents arrested Turner. He pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and being an unlicensed firearm dealer in violation of 18 U.S.C. § 922(a)(1)(A).

At sentencing, Turner unsuccessfully challenged the application of the Armed Career Criminal Act and a four-level enhancement for trafficking in firearms under U.S.S.G. § 2K2.1(b)(5). He succeeded, however, in striking an enhancement for the obliterated serial number on the grounds that his connection to the second sale was "too tenuous." R. 97 at 211. The district court sentenced Turner to 180 months, the statutory minimum under the Armed Career Criminal Act.

In the aftermath of *Johnson v. United States*, 135 S. Ct. 2551 (2015), we vacated Turner's sentence and remanded the case to determine whether the Armed Career Criminal Act still applied and to determine *Johnson*'s "effect, if any, on the four-level trafficking enhancement." *United States v. Torres*, 644 F. App'x 663, 664 (6th Cir. 2016).

At re-sentencing, the government did not pursue the Armed Career Criminal Act designation. But the district court re-imposed the four-level trafficking enhancement and ultimately sentenced Turner to 60 months on the trafficking charge and 120 months on the possession charge, both to run concurrently. Turner appealed.

## II.

*Four-level trafficking enhancement*. Turner claims that the district court erred in applying a four-level enhancement for selling firearms under U.S.S.G. § 2K2.1(b)(5) because the guideline turns on the same conduct covered by the two underlying statutory violations and because insufficient evidence supported the enhancement. We disagree.

A court, it is true, may not factor the same conduct into a defendant's sentence more than once. *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999). But no double counting occurs if the enhancement accounts for distinct aspects of the defendant's offense conduct. *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010).

Section 2K2.1(b)(5) adds four levels "[i]f the defendant engaged in the trafficking of firearms." The Commentary says that this enhancement applies if the defendant, when transferring two or more firearms, "knew or had reason to believe" that he was transferring a firearm to an individual "whose possession or receipt of the firearm would be unlawful" or "[w]ho intended to use or dispose of the firearm unlawfully." *Id.* cmt. 13(A).

This guidelines enhancement targets conduct distinct from the conduct punished by the two statutes. Section 922(g) is Turner's primary count of conviction and led to a ten-year sentence. The statute prohibits any person convicted of a crime punishable by imprisonment for a term exceeding one year from shipping, transporting, or possessing "any firearm or ammunition" or receiving "any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." The upshot is that § 922(g) covers possession, not sale. It does not require unlawful recipients or "trafficking" in multiple weapons. It just bars possession and thus does not double count. *See United States v. Freeman*, 640 F.3d 180, 187 (6th Cir. 2011).

In view of this conclusion, it's difficult to see what Turner hopes to gain from his separate double-counting argument with respect to § 922(a)(1)(A)—which led to a five-year concurrent sentence. If the ten-year sentence must stand, the elimination of a concurrent five-year sentence would not offer him much solace.

Be that as it may, § 922(a)(1)(A) punishes different conduct anyway. It prohibits any person who, without a license, "engage[s] in the business of importing, manufacturing, or

dealing in firearms, or in the course of such business [] ship[s], transport[s], or receive[s] any firearm in interstate or foreign commerce." The enhancement thus contains an element not found in § 922(a)(1)(A): reason to believe that the buyer may not legally possess a firearm or intends to use the firearm unlawfully.

Also unavailing is Turner's challenge to the sufficiency of the evidence to support the § 2K2.1(b)(5) enhancement. The key question is whether the district court abused its discretion in finding that Turner had reason to know that the buyers "intended to use or dispose of [his] firearm[s] unlawfully." U.S.S.G. § 2K2.1(b)(5), cmt. 13(A); *Gall v. United States*, 552 U.S. 38, 51 (2007). Our court has inferred this knowledge from a variety of circumstances. In one case, we held that the exchange of guns for cash and heroin late at night provided sufficient reason for the defendant to believe that the buyer, his heroin dealer, intended to use the weapons unlawfully. *Freeman*, 640 F.3d at 189. In another case, the court looked to the nature of the guns (there, a gun with no serial number and a sawed-off shotgun), the fact that the defendant had advertised one gun as a "murder weapon," and the defendant's conduct during the sale (instructing the agent how to illegally alter a gun's barrel) in affirming application of the enhancement. *United States v. Jenkins*, 528 F. App'x 483, 486 (6th Cir. 2013).

Ample evidence supports the trial judge's finding that Turner "knew or had reason to believe" the guns would be used illegally. Hernandez told the agents that Turner would find them at least two more guns, in addition to the two he had already sold. Turner thus knew that this was not a one-and-done arrangement. The buyers wanted a slew of guns. On top of that, Hernandez knew the buyers would accept stolen or otherwise "dirty" guns and he explained all of this to Turner. In response, Turner said, "yeah dog, I got you." R. 98-10 at 8; R. 97 at 94–95. Russell Johnson, an Alcohol, Tobacco, and Firearms agent, participated in the investigation

debriefing, and he confirmed Turner's knowledge. Hernandez knew that the buyers could not pay more than $200 because they wished to resell the guns at a profit, and he suggested that he told Turner as much. Turner also offered to sell drugs to the buyers, another sign that he did not think they were on the up and up. Add to this the context of the sale—hidden handguns and parked car dealings—and you have enough evidence to support the district court's finding that Turner knew or should have known that the buyers had unlawful uses in mind.

*Crime of violence enhancement.* Turner challenges his crime-of-violence enhancement on the ground that his Ohio felonious assault conviction does not count. Because he did not raise this challenge at sentencing, plain-error review applies. *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc). No such error occurred.

In calculating a defendant's sentencing range, the guidelines provide for an increased base-offense level where the defendant has a prior conviction for a crime of violence. U.S.S.G. § 2K2.1(a). The guidelines define "crime of violence" as any offense punishable by more than one year of imprisonment that "has as an element the use, attempted use, or threatened use of physical force against the person of another" or that falls into one of several enumerated categories. *Id.* § 4B1.2(a).

Ohio defines felonious assault as causing "serious physical harm to another or to another's unborn" and defines "serious physical harm" to include, among other things, any "mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment." Ohio Rev. Code §§ 2901.01(A)(5), § 2903.11(A)(1).

The problem for Turner is that we have already held that one can "[c]ause serious physical harm to another" under Ohio's felonious assault statute "only by knowingly using force capable of causing physical pain or injury, *i.e.*, violent physical force." *United States v.*

*Anderson*, 695 F.3d 390, 400 (6th Cir. 2012). Although *Anderson* involved the definition of "violent felony" under the Armed Career Criminal Act, the language in that definition parallels the definition of "crime of violence" in the Guidelines, and "authority interpreting one phrase is generally persuasive when interpreting the other." *United States v. Vanhook*, 640 F.3d 706, 712 n.4 (6th Cir. 2011).

Our unpublished certificate-of-appealability ruling in *In re Williams*, No. 16-3411 (6th Cir. Oct. 27, 2016), does not alter this conclusion. *Williams* states only that "it is possible that *Anderson* . . . may no longer control the determination whether a conviction for attempted felonious assault qualifies as a predicate offense." *Id.* at *4. It is one thing to say that Turner's challenge to *Anderson* raises a debatable question; it is quite another to say that reliance on *Anderson* generates plain error.

For these reasons, we affirm.