**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0560n.06

**Nos. 12-3723/12-3724**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
***Jun 10, 2013***
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| PAUL JENKINS and JASON JAHNS, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendants-Appellants. | ) | |

Before: BATCHELDER, Chief Judge; SUHRHEINRICH and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Paul Jenkins and Jason Jahns each pled guilty to possessing a firearm illegally. In sentencing the two men, the district court treated several of their prior convictions as "violent felonies" under the Armed Career Criminal Act. The men challenge this characterization of their prior crimes and add that, even if they are wrong, the attorneys who previously represented them had conflicts of interest that make the convictions unconstitutional. Jenkins also contests the procedural and substantive reasonableness of his sentence. We affirm.

I.

Jenkins and Jahns are familiar with the criminal justice system. Together, they are responsible for 11 adjudications of juvenile delinquency, 11 burglary convictions, 3 theft convictions and a miscellany of other felony convictions ranging from criminal trespass to resisting arrest.

Today's case arises from a home robbery, in which they stole eight firearms, seven of which they sold to an undercover ATF agent.

The government charged Jenkins and Jahns with being felons in possession of a firearm. *See* 18 U.S.C. § 922(g). They pled guilty, and the district court sentenced each man to 240 months.

## II.

The Armed Career Criminal Act establishes a mandatory minimum sentence of 15 years for a defendant convicted of possession of a firearm who has "three previous convictions . . . for a violent felony or a serious drug offense." 18 U.S.C. § 924(e). In selecting which "previous convictions" for "violent felon[ies]" justified enhancing the defendants' sentences under the Act, the district court had a lot to work with. It settled on three burglary convictions from Kentucky: two of the first degree and one of the second degree. *See* R.77 at 10. Jenkins and Jahns claim that second-degree burglary in Kentucky is not a "violent felony." We disagree.

"[T]he term 'violent felony'" expressly includes "burglary," 18 U.S.C. § 924(e)(2)(B), which covers "an unlawful or unprivileged entry into . . . a building or other structure, with intent to commit a crime," *Taylor v. United States*, 495 U.S. 575, 598 (1990). The elements of second-degree burglary in Kentucky largely track this definition: "A person is guilty of burglary in the second degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a dwelling." Ky. Rev. Stat. § 511.030; *cf. United States v. Douglas*, 242 F. App'x 324, 331 (6th Cir. 2007) (holding that second-degree burglary in Kentucky constitutes a "crime of violence" under the

career offender designation in U.S.S.G. § 4B1.1); *United States v. Ford*, 560 F.3d 420, 421 (6th Cir. 2009) (explaining that this court "treat[s] a 'crime of violence' under § 4B1.1(a) of the guidelines the same as a 'violent felony' under the Armed Career Criminal Act").

To the extent the Kentucky law is narrower than the generic crime described in *Taylor*—proscribing entry into a "dwelling" as opposed to any "building or other structure"—that takes it closer to the common-law definition of the crime. *See Taylor*, 495 U.S. at 598–99 (noting that a burglary conviction in a common-law state "necessarily implies that the defendant has been found guilty of all the elements of generic burglary"). As we recognized recently in holding that second-degree burglary in Tennessee constitutes a "violent felony," a statute that limits its proscription to "dwellings" "fits within the enumerated offenses in § 924(e)(2)(B)(ii)." *United States v. Jones*, 673 F.3d 497, 505 (6th Cir. 2012).

Jenkins and Jahns insist that several *additional* prior convictions do not constitute violent felonies: Jenkins's conviction for third-degree burglary in Ohio, his conviction for burglary in Tennessee, and Jahns's conviction for fourth-degree burglary in Ohio. The Act requires just three prior convictions, not more. The rest is overkill. At any rate, these crimes amount to violent felonies as well. *United States v. Coleman*, 655 F.3d 480, 483 (6th Cir. 2011) (Ohio third-degree burglary under § 924(e)); *United States v. Anderson*, 923 F.2d 450, 454 (6th Cir. 1991) (Tennessee burglary under § 924(e)); *United States v. Skipper*, 552 F.3d 489, 492–93 (6th Cir. 2009) (Ohio fourth-degree burglary under § 4B1.1); *United States v. Wright*, 423 F. App'x 515, 516 (6th Cir. 2011) (Ohio fourth-degree burglary under § 924(e)).

Jahns separately contends that the residual clause of the Act, which adds any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another" to the ranks of "violent felonies," 18 U.S.C. § 924(e)(B)(ii), is void for vagueness. Jahns Br. at 18–20. Once again, he is barking up the wrong tree. As its name implies, the "residual" clause provides a basis for adding other, non-enumerated crimes to the category of "violent felonies." Three crimes is enough. At any rate, the argument goes nowhere even on its own terms. *See James v. United States*, 550 U.S. 192, 210 n.6 (2007); *United States v. Taylor*, 696 F.3d 628, 633 (6th Cir. 2012).

Jenkins and Jahns add that their three Kentucky convictions, even if they amount to violent felonies, were obtained in violation of their Sixth Amendment right to counsel—because their prior counsel had conflicts of interest—and thus should not count. *Custis v. United States*, 511 U.S. 485 (1994), forecloses this argument. The Supreme Court held that a defendant may not use a § 924(e) sentencing hearing to attack a prior state conviction collaterally. *Id.* at 490. There is one exception: if a defendant can show that he was unrepresented during his state proceedings in violation of "the right to have appointed counsel established in *Gideon* [*v. Wainwright*, 372 U.S. 335 (1963)]." *Custis*, 511 U.S. at 496; *see also United States v. Smith*, 36 F.3d 490, 492 (6th Cir. 1994). Jenkins and Jahns do not claim they lacked counsel in the Kentucky cases, only that their counsel rendered ineffective assistance due to conflicts of interest. This argument thus does not fall within the exception. *See Smith*, 36 F.3d at 492; *United States v. Neller*, 229 F.3d 1154, *18–19 (6th Cir. 2000) (unpublished table decision) (rejecting an identical conflict-of-interest argument).

III.

Jenkins separately challenges the reasonableness of his sentence. When reviewing a sentence on appeal, we "first ensure that the district court committed no significant procedural error" and "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 51 (2007).

As a matter of procedure, Jenkins argues that the district court mistakenly assessed a four-level enhancement against him for "engag[ing] in the trafficking of firearms." U.S.S.G. § 2K2.1(b)(5). The provision applies if a defendant "transported, transferred, or otherwise disposed of two or more firearms to another individual" and "knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual whose possession or receipt of the firearm would be unlawful; or who intended to use or dispose of the firearm unlawfully." *Id.* § 2K2.1 cmt. 13.

The district court permissibly imposed the enhancement. One of the weapons Jenkins sold to the undercover agent had no serial number. Another was an illegal, sawed-off shotgun, and Jenkins and his compatriots showed the agent how to convert the barrels of the other firearms into similarly illegal weapons. Jenkins also advertised one of the guns as a "murder weapon." R.1-1 at 2. These facts all support the court's conclusion that Jenkins "knew or had reason to believe" that the agent to whom he sold the seven guns "intended to use or dispose of [them] unlawfully." § 2K2.1(b)(5); *cf. United States v. Marceau*, 554 F.3d 24, 32 (1st Cir. 2009) (upholding a

§ 2K2.1(b)(5) enhancement in large part because the defendant removed the firearms' serial numbers); *United States v. Juarez*, 626 F.3d 246, 252 (5th Cir. 2010) (upholding a § 2K2.1(b)(5) enhancement due to the "number of weapons" (over two dozen), "their type" (assault rifles) and "the circumstances surrounding [the defendant's] relationship with [the buyer]").

As a matter of substance, Jenkins claims that the district court should have taken into account the disparity between his sentence and that of his partner in crime, Kory Allgire. Allgire was sentenced to 24 months of imprisonment, as compared to Jenkins's 240 months, and Allgire was not subject to the same four-level enhancement for committing a crime involving eight or more firearms. Although Jenkins acknowledges that he and Allgire had different criminal histories, Jenkins Br. at 29, he insists that it was "substantively unreasonable for [the] court to refuse to consider the unwarranted disparity" between the sentences of the two men, *id.*

Like many of Jenkins's other arguments, this one runs into precedent. Sentencing courts have no obligation to eliminate disparities between the sentences of individuals involved in a crime scheme, particularly if they have different criminal histories. *See United States v. Simmons*, 501 F.3d 620, 623–24 (6th Cir. 2007); *United States v. LaSalle*, 948 F.2d 215, 218 (6th Cir. 1991). True enough, 18 U.S.C. § 3553(a)(6) instructs sentencing judges "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," but this provision references "*national* disparities," not "disparities between one individual's sentence and another individual's sentence." *Simmons*, 501 F.3d at 623 (emphasis added); *see also United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008).

Making matters worse for Jenkins, he offers no evidence showing what Allgire was charged with, what his role in the criminal scheme was, or which if any enhancements the court tacked onto his sentence. Nor has he offered any evidence about Allgire's criminal history, except for the hurtful reality that Allgire "did not have nearly the prior criminal record" Jenkins and Jahns did. R.114 at 6. All we know is that Allgire was charged in a separate indictment, *id.*, and that he pled guilty. In light of these distinctions and the otherwise-limited record, the district court declined to consider the disparity between Allgire's sentence and the guidelines range calculated for Jenkins. *Id.* at 17–18. This decision was not an abuse of discretion.

IV.

For these reasons, we affirm.