NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0186n.06

Case Nos. 15-3346/3353

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 01, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| GILBERTO TORRES; ANTONIO | ) | DISTRICT OF OHIO |
| TURNER, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| _____/ | | |

Before:  COLE, Chief Judge; MERRITT and GRIFFIN, Circuit Judges.

**MERRITT, Circuit Judge.**  This is a consolidated direct appeal by two defendants in a criminal case challenging their sentences.  It arises out of a six-count indictment against Gilberto Torres, Antonio Turner, and Juan Luis Hernandez.  Only Torres and Turner are parties to this appeal.  Torres and Turner both pled guilty to being felons in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and being unlicensed dealers of firearms in violation of 18 U.S.C. § 922(a)(1)(A).[1]  Turner has also been charged with three prior qualifying felonies under the

---

[1] 18 U.S.C. § 922, Unlawful Act,  states in relevant part:

> (a) It shall be unlawful--
> (1) for any person--

Armed Career Criminal Act, 18 U.S.C. § 924(e),[2] in conjunction with his felon-in-possession

charge, which carries a 15-year mandatory minimum sentence. Torres challenges the four-level

enhancement he received for "trafficking" in firearms pursuant to U.S.S.G. § 2K2.1(b)(5),

arguing that there was insufficient evidence to support the enhancement. Turner challenges the

15-year mandatory minimum sentence he received under the Armed Career Criminal Act,

contending that two of the Ohio convictions used as predicate offenses no longer qualify in light

of the recently issued Supreme Court opinion in *Johnson v. United States*, 135 S. Ct. 2551

(2015), which held that the so-called "residual clause" of the Armed Career Criminal Act is

unconstitutionally vague. Turner also claims the district court erred in applying the four-level

enhancement for "trafficking" in firearms pursuant to U.S.S.G. § 2K2.1(b)(5).

We affirm Torres' 46-month sentence, which includes the four-level enhancement for

trafficking because it is supported by sufficient evidence. As for Turner, we vacate his sentence

and remand to the district court to determine whether Turner has the requisite three predicate

offenses necessary to sentence him to a mandatory minimum of 15 years under the Armed

---

> (A) except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce;
> . . .
> (g) It shall be unlawful for any person--
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
> . . .
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

[2] 18 U.S.C. § 924(e) provides:

> (1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

Career Criminal Act in light of *Johnson,* which was decided during the pendency of Turner's

direct appeal, and its effect, if any, on the four-level trafficking enhancement.

## I.

This case arises out of a large-scale undercover investigation by the Bureau of Alcohol,

Tobacco, Firearms and Explosives into the illegal gun market in the Cleveland area.

### Defendant Torres

Torres was involved in two handgun sales to undercover agents.  On July 22, 2014, the

day after meeting an undercover confidential informant for the Bureau, Torres sold a handgun

for $300 to the confidential informant and an undercover agent for the Bureau.  The confidential

informant and undercover agent represented themselves to Torres as firearms traffickers.  The

firearm sold by Torres was "clean," meaning it was not stolen and had not been involved in any

criminal activity.  The  undercover team told Torres that they would purchase weapons that were

"dirty" (had been stolen or involved in a crime) or had the serial numbers obliterated.  They did

not tell Torres what they intended to do with the purchased gun.  Torres said he would call if he

had more firearms to sell.

Torres contacted the undercover team again and said he and his associate, codefendant

Hernandez (not a party to this appeal), had two firearms to sell.  Two days later, on July 24, the

undercover team drove Torres to Hernandez' house.  Torres told the undercover team that he and

Hernandez might have additional weapons to sell, including an AK-47-style automatic rifle.

Torres also specifically mentioned a .380 revolver that is "good because there are no casings left

behind."  At Hernandez' house, Torres, Hernandez and the confidential informant discussed the

sale of various firearms.  Hernandez then put a handgun in a plastic bag and brought it to the

undercover agent waiting in the car.  She paid Hernandez $400.  The undercover team again told

Torres and Hernandez that they would buy guns that were not clean and then sell them in Chicago and "down there by the border." On the ride back, Torres told the undercover team that Hernandez did not want to sell a second gun that day because he had recently reported it stolen and wanted to wait, but Torres called Hernandez and told him to hold the gun for the undercover team. On July 28, Torres and the confidential informant discussed the sale of the AK-47-type rifle, but Torres and Hernandez had a falling out and Torres refused to deal with Hernandez, so the sale did not occur.

Torres pled guilty to 18 U.S.C. § 922(g)(1) (Count 1) and § 922(a)(1)(A) (Count 2) without a plea agreement. A presentence report was prepared on February 2, 2015, that found a base offense level of 20 with no enhancements and a 3-level reduction for acceptance of responsibility. Combined with a criminal history category of III, the guideline range was 30-37 months. The government filed objections, arguing that Torres' conduct warranted a 4-level enhancement to the base offense level for "trafficking" pursuant to U.S.S.G. § 2K2.1(b)(5) ("If the defendant engaged in the trafficking of firearms, increase by 4 levels.") At sentencing, the district judge agreed with the government and applied the 4-level trafficking enhancement. Sentencing Hearing Tr. at 207 (Mar. 12, 2015). As a result, Torres was sentenced to 46 months imprisonment, the low end of a 46-57 month revised guideline range. Torres appeals the 4-level enhancement for trafficking as not supported by the evidence.

### Defendant Turner

On July 31, 2014, Hernandez called the confidential informant to tell him he had one firearm to sell. The confidential informant met Hernandez and Turner at Hernandez' house. Turner lifted his shirt to show a Cobra .380 caliber pistol. Turner also had a .40 caliber gun in his backpack. Both guns were put in the backpack and brought out to the car where the

undercover agent paid them $850. Hernandez told the undercover team that Turner had two more weapons for sale and when he received them from Turner he would contact them. Hernandez told the undercover team that he had explained to Turner that the undercover team would accept "dirty" guns and Turner acknowledged that he knew this. On August 5, Hernandez sold two more guns to the undercover team allegedly belonging to Turner, but Turner was not present during the sale because he had been arrested a few days earlier and was in jail. The district court did not attribute the conduct from the August 5 sale conducted by Hernandez to Turner, finding it too attenuated.

Turner pled guilty to the felon-in-possession charge and the unlicensed dealer charge, but he did not concede application of the Armed Career Criminal Act to his felon-in-possession charge, which carries a 15-year mandatory minimum sentence if applicable. As it did with Torres, the government argued for a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(5) for trafficking. At sentencing, the district court applied the four-level enhancement for trafficking to Turner, bringing his offense level to 30. Sentencing Hearing Tr. at 203-08, 221. With a criminal history category of VI, Turner's guideline range was 168-210 months. That range was modified to a lower end of 180 months to reflect the 15-year mandatory minimum sentence under the Armed Career Criminal Act. The district court sentenced Turner to 180 months, stating that due to Turner's criminal history, it did not have "much discretion" in whether to apply the 15-year mandatory minimum under the Armed Career Criminal Act. The district court did not make any specific findings about the predicate offenses used to apply the Act to Turner. Sentencing Hearing Tr. at 267.

On appeal, Turner contends that he is not subject to the Armed Career Criminal Act mandatory minimum because he does not have the required three qualifying predicate

convictions. He also challenges the application of the four-level enhancement under U.S.S.G. § 2K2.1(b)(5) on two grounds: (1) insufficiency of the evidence, and (2) application of the enhancement constitutes impermissible double counting because his conviction under 18 U.S.C. § 922(a)(1)(A) punished the exact same conduct.

## II.

### A. Application of Four-Level Enhancement under U.S.S.G. § 2K2.1(b)(5) Against Torres

Torres received a four-level enhancement under U.S.S.G. § 2K2.1(b)(5), which applies if "the defendant engaged in the trafficking of firearms." A defendant engaged in the trafficking of firearms if he:

> (i) transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and

> (ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—

> > (I) whose possession or receipt of the firearm would be unlawful; or

> > (II) who intended to use or dispose of the firearm unlawfully.

U.S.S.G. § 2K2.1, cmt.13. Torres contends that the district court clearly erred in imposing the four-level enhancement under § 2K2.1(b)(5) because the government failed to establish by a preponderance of the evidence that he knew or had reason to believe that the undercover agent intended to use or dispose of the firearms unlawfully. A review of the facts and inferences from those facts convinces us that the district court did not clearly err in applying the enhancement.

Torres accompanied his codefendant Hernandez on two occasions when guns were sold to an undercover agent and a confidential informant. Although the facts indicate that Hernandez took the lead in effecting the sales, Torres was present during the July 22 and July 24, 2014, sales and took part in the conversations with the undercover team. The government argues that

Torres knew or had reason to believe that the recipients would use or dispose of the guns unlawfully because of the "secretive, street-level nature of the cash sales," the undercover team's comments that they would purchase "dirty" or stolen guns and their comments about reselling the guns in places "like Chicago" or "down by the border." The record reflects a conversation on July 22, 2014, between Torres and the undercover agent about whether the area where the transaction took place was "hot"—a reference to whether police were in the area. During the July 24, 2014, transaction the firearm was concealed in a plastic bag for transporting and selling so as not to be seen by onlookers. Torres also asked the undercover team if they could sell him drugs. The most damaging statement made by Torres was his statement to the undercover team that the revolver he was selling was a useful gun because it does "not leave casings behind," which could be used to trace a gun owner.

In *United States v. Freeman,* 640 F.3d 180, 188-90 (6th Cir. 2011), we held that "furtive" selling of firearms in the "wee hours" of the morning was sufficient indirect evidence to support the enhancement. In that case we cited with approval to several cases from other circuits with facts similar to those here. *See, e.g., United States v. Juarez*, 626 F.3d 246, 252 (5th Cir. 2010) (holding that the fact that the transferee "did not wish to be associated with the [firearms] transactions," the secretive nature of the defendant's dealings with the transferee, "and the fact that she was paid $200 above the retail cost of each of twenty-five weapons . . . would give Juarez reason to believe that the firearms were being purchased for an unlawful purpose"); *United States v. Mena*, 342 F. App'x 656, 658 (2d Cir. 2009) (holding that there was no clear error in the district court's finding that "the circumstances [of the offense conduct] indicate by a preponderance of the evidence that [Mena] knew or had reason to believe that his delivery of the firearms was to someone or people who intended to use or dispose of the firearms unlawfully"

where the defendant "twice delivered guns in a plastic bag in exchange for cash on a street in Manhattan") (alterations in original) (internal quotation marks omitted); s*ee also United States v. Garcia*, 635 F.3d 472, 478 (10th Cir. 2011) (providing that court may rely on common-sense inferences drawn from circumstantial evidence when determining applicability of a § 2K2.1(b)(5) enhancement).

As these and other cases demonstrate, the focus of the trafficking enhancement is on what Torres knew or had reason to believe about the purchasers' plans for the firearms. He knew the undercover team would accept "dirty" guns and that they planned to sell the guns out of state. Reviewing the totality of the circumstances and allowable inference, the district court did not clearly err when it applied the § 2K2.1(b)(5) enhancement. The clandestine nature of the dealings and the comments by the undercover team purchasing the guns would have given Torres reason to believe that they were being purchased for an unlawful purpose. Torres has raised no question arising from the fact that the government agents were engaged in a "sting" and would not use the guns unlawfully.

### B.  Turner's Sentence Under the Armed Career Criminal Act

Turner's case presents a more difficult question in light of a recent Supreme Court opinion. The Armed Career Criminal Act provides that a person convicted under 18 U.S.C. § 922(g)(1) of being a felon in possession of a firearm shall be imprisoned for a minimum of fifteen years if that person has three previous convictions for "violent felon[ies]." 18 U.S.C. § 924(e)(1). The Act defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*[.]

18 U.S.C. § 924(e)(2)(B) (emphasis added). The italicized portion of the statute is known as the "residual clause." The recent Supreme Court case *Johnson v. United States*, 135 S. Ct. 2551 (2015), held that the residual clause is unconstitutionally vague and cannot provide the basis for a finding that a predicate offense qualifies as a "violent felony" for purposes of the Armed Career Criminal Act. *Id.* at 2557. Subsection (i) and the first part of subsection (ii) ("burglary, arson, or extortion, involves use of explosives") remain grounds for finding a predicate offense to constitute a "violent felony," but the "otherwise" clause can no longer be used to support the 15-year mandatory minimum punishment.

The issue before us is whether, after *Johnson*, Turner still qualifies for a mandatory minimum sentence of 15 years under 18 U.S.C. § 924(e). Turner was sentenced under the Act on March 12, 2015, more than three months before the Supreme Court handed down *Johnson*.[3] At the time of Turner's sentencing, the "residual clause" was still being used to determine whether a prior crime was a "violent felony," and Turner had four prior convictions that the government argued qualified as predicate offenses under the Armed Career Criminal Act. On appeal, Turner contends that two of the 2006 Ohio convictions relied upon as predicate offenses—one for third degree burglary, and one for robbery—were considered "violent felonies" only for the purposes of the residual clause and they no longer qualify as predicate

---

[3] This Court is required to apply *Johnson* to Turner's case, which is on direct appeal and is therefore not a final decision. *See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) (holding that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final"). The Sixth Circuit has remanded cases for resentencing where the case is on direct appeal and the defendant was sentenced under the residual clause of the Armed Career Criminal Act. *See, e.g., United States v. Castle*, 625 F. App'x 279 (6th Cir. 2015); *United States v. Austin*, 623 F. App'x 306 (6th Cir. 2015); *United States v. Holder*, 612 F. App'x 838 (6th Cir. 2015); *United States v. Bell*, 612 F. App'x 378 (6th Cir. 2015) (per curiam); *United States v. Bilal*, 610 F. App'x 569 (6th Cir. 2015); *United States v. Rivera*, 620 F. App'x 390 (6th Cir. 2015).

offenses after *Johnson*. The government concedes that the Ohio burglary conviction was considered a violent felony only under the language of the residual clause and can no longer count towards the three required predicate offenses. But the government argues that Turner's robbery conviction continues to qualify as a predicate offense for purposes of the Armed Career Criminal Act because it "has as an element the use, attempted use, or threatened use of physical force against the person of another" and is therefore a "violent felony" pursuant to subsection (i), which is still in force after *Johnson*.

To determine if Turner's 2006 robbery conviction is a "violent felony" under subsection (i), we look to the Ohio robbery statute, Ohio Rev. Code § 2911.02, which states:

> (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> (1) Have a deadly weapon on or about the offender's person or under the offender's control;
>
> (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
>
> (3) Use or threaten the immediate use of force against another.[4]
>
> (B) Whoever violates this section is guilty of robbery. A violation of division (A)(1) or (2) of this section is a felony of the second degree. A violation of division (A)(3) of this section is a felony of the third degree.
>
> (C) As used in this section:
>
> (1) "Deadly weapon" has the same meaning as in section 2923.11 of the Revised Code.

---

[4] Under federal law, the definition of "physical force" in the state statute must encompass "force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (The meaning of "physical force" is a question of federal law.). Ohio defines "force" as "violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." Ohio Rev. Code § 2901.01(A)(1). The force element of Ohio's robbery statute may encompass conduct that does not meet *Johnson*'s definition of physical force. For example, based on text alone, the definition of force in Ohio Rev. Code § 2901.01(A)(1) includes "compulsion" and "constraint" exerted against a "thing."

> (2) "Theft offense" has the same meaning as in section 2913.01 of the Revised Code.

The parties disagree on whether Turner was convicted of robbery under Ohio Rev. Code § 2911.02(A)(1) or under (A)(3). The government contends that Turner was convicted under subsection (A)(3) ("Use or threaten the immediate use of force against another") and therefore the conviction meets the definition of "violent felony" under subsection (i) of the Armed Career Criminal Act ("has as an element the use, attempted use, or threatened use of physical force against the person of another"). Turner contends that he was convicted under subsection (A)(1) ("No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall . . . [h]ave a deadly weapon on or about the offender's person or under the offender's control.") of the robbery statute and the conviction was not a "violent felony" because it does not contain the necessary element of "the use, attempted use, or threatened use of physical force against the person of another." He argues that the conviction, therefore, could only have qualified as a predicate offense under the now-unconstitutional "residual clause" of the Armed Career Criminal Act.

The burden is on the government to demonstrate unequivocally that predicate crimes fit squarely within the purview of the remaining clauses of the Armed Career Criminal Act. *See Johnson*, 135 S. Ct. at 2580. Ohio's robbery statute undoubtedly covers some behavior that implicates physical force. But the statute covers a wide range of behaviors, including those that may not include "the use, attempted use, or threatened use of physical force against the person of another." The government first argues that Turner did not specifically challenge in the district court whether the 2006 Ohio state conviction for robbery qualified as one of the three predicate offenses needed to apply the mandatory minimum under Section 924(e) because he argued only that the residual clause was unconstitutionally vague as applied to his burglary conviction.

Regardless of whether Turner preserved his challenge below, if his Ohio robbery conviction does not qualify as a "violent felony" under § 924(e)(2)(B)(i), the error is plain and may be reviewed for the first time on direct appeal. *See, e.g., United States v. Holder*, 612 F. App'x 838 (6th Cir. 2015) (Plain error review applies because defendant did not bring a vagueness challenge against the residual clause in the district court.).

In order to determine whether Turner's conviction under the Ohio robbery statute covers conduct that qualifies as a predicate offense under the Armed Career Criminal Act, we may look to the "the terms of the charging document[s], the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005). Based on this, the government has moved our Court to take judicial notice of the plea and sentencing transcript for Turner's robbery conviction in the Ohio Court of Common Pleas. Government's Motion Requesting that the Appellate Court Take Judicial Notice of State Proceedings, Oct. 28, 2015. The Federal Rules of Evidence state that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Judicial notice is only appropriate if 'the matter [is] beyond reasonable controversy . . . The rule proceeds on the theory that . . . dispensing with the traditional methods of proof [should only occur] in clear cases.'" *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) (quoting advisory committee note to Fed. R. Evid. 201(b)).

The government argues that the facts contained in the guilty plea and sentencing transcript "accurately and readily determine" that Turner pleaded guilty to Ohio Rev. Code § 2911.02(A)(3), the language that it claims qualifies under the "use of force" clause in the Armed

Career Criminal Act. Contrary to the government's argument, the state court documents do not clearly resolve the issue of under what section of the robbery statute Turner was indicted, pled guilty to or was sentenced. The indictment references "Aggravated Robbery" under Ohio Rev. Code § 2911.01, which includes as an element displaying or brandishing a weapon. But, according to the Journal Entry, the charge was changed on the recommendation of the prosecutor to "Robbery 2911.02-F2." There is no explanation in the record for why the charge was changed.

Likewise, the plea and sentencing transcript from the state court proceedings submitted by the government offer no clear answer. The transcript relates to three different docketed criminal cases against Turner (known as "Antonio Bailey" in those proceedings), each with multiple counts. The only case with a robbery count is Case No. 486354. The entirety of the colloquy between the judge and Turner concerning this charge is as follows:

> The COURT: In case 486354, you're going to plead guilty to the first count, it's a robbery, a felony of the 3rd degree with a firearms specification, a 1-year firearm specification. So you could receive anything between 1, 2, 3, 4 or 5 years and a 1-year firearm specification. This is where you're going to get sentenced, from here, to the 2 years. Do you understand that?
>
> THE DEFENDANT: Yes.
> . . .
> THE COURT: All right. I'm going to give you a suspended sentence on all counts except for count 1, robbery, in case 486354, where you're going to get 1 year on the robbery and you're also going to get 1 year on the firearm specification, which would run consecutive. So that gives you 2 years.

Plea and Sentencing Hearing Tr. at 6, 9, Case Nos. CR 479412, CR 484951, CR 486354 (Ct. of Common Pleas, Cuyahoga Cty. Oct. 27, 2006). In the colloquy above, the court states "it's a robbery, a felony of the *3rd degree*." (Emphasis added.) The Journal Entry, dated October 31, 2006, is the final document from the state court in the case and the one that Turner contends is the definitive document regarding his conviction. The Journal Entry indicates that Turner pled

guilty to robbery under Ohio Rev. Code § 2911.02 in the *second* degree (referencing "F2" after the word "robbery). The discrepancy in the state-court record between whether the conviction is a second- or third-degree felony is relevant because the degree of conviction aids in resolving the conflict between Turner and the government concerning whether Turner was convicted under section (A)(1) or (A)(3) of the Ohio robbery statute: "A violation of division (A)(1) or (2) of this section is a felony of the second degree. A violation of division (A)(3) of this section is a felony of the third degree." Ohio Rev. Code § 2911.02(B).

The information from the state court proceedings that the government has requested we judicially notice does not plainly and unequivocally state whether Turner's robbery conviction is under (A)(1) or (A)(3) of the Ohio robbery statute, a necessary step in determining whether the conviction is a "violent felony" for purposes of applying the 15-year mandatory minimum under the Armed Career Criminal Act. The information provided to resolve the issue conflicts in at least two ways. First, the exact charge against Turner cannot be determined. The state-court record leaves unexplained the change between the charge in the indictment, which says that Turner was indicted under § 2911.01, and the ultimate charge of conviction recorded in the Journal Entry, which was under § 2911.02. Second, we cannot determine whether Turner's robbery conviction was in the second or third degree. The colloquy with the state-court judge indicates a charge of robbery in the third degree, while the Journal Entry seems to indicate by the "F2" designation that the robbery conviction was in the second degree. Even assuming we grant the government's motion to take judicial notice of documents from the state-court proceedings, we cannot readily determine whether the conviction was under section (A)(1) or (A)(3) of Ohio's robbery statute. The paper record is not beyond controversy and, therefore, under Federal Rule of Evidence 201(b), it should not be the deciding factor in determining whether Turner's Ohio

robbery conviction is a qualifying predicate offense for purposes of the Armed Career Criminal Act.

For the foregoing reasons, we vacate Turner's mandatory-minimum sentence and remand to the district court for reconsideration in light of *Johnson*, discussed above, and a determination of what Ohio offense, if any, qualifies as an offense supporting a 15-year mandatory-minimum sentence. We affirm the judgment of the district court with regards to defendant Torres.