# United States Court of Appeals
## For the First Circuit

No. 15-1775

UNITED STATES OF AMERICA,

Appellee,

v.

DASEAN TAYLOR,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Howard, Chief Judge,
Kayatta and Barron, Circuit Judges.

Matthew A. Kamholtz on brief for appellant.
Carmen M. Ortiz, United States Attorney, and Mark T. Quinlivan, Assistant U.S. Attorney, on brief for appellee.

January 9, 2017

**BARRON**, **Circuit Judge**.  Dasean Taylor was convicted of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g).  He was sentenced to a term of 71 months' imprisonment.  He now challenges his sentence, arguing that the District Court erroneously applied a sentencing enhancement for trafficking in firearms under U.S.S.G. § 2K2.1(b)(5).  We affirm.

## I.

On March 9, 2015, Taylor pled guilty to the offense of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  Prior to the sentencing hearing, the government had submitted a motion requesting that the District Court apply the trafficking in firearms enhancement under § 2K2.1(b)(5) of the United States Sentencing Guidelines.

> Application note 13 to U.S.S.G. § 2K2.1 states:
>
> (A) In General. - Subsection (b)(5) applies . . . if the defendant -
>
> (i) transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and
>
> (ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual -
>
> (I) whose possession or receipt of the firearm would be unlawful; or

(II) who intended to use or dispose of the firearm unlawfully.

(B) Definitions. - For purposes of this subsection: "Individual whose possession or receipt of the firearm would be unlawful" means an individual who (i) has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or (ii) at the time of the offense was under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

The parties agree that the trafficking enhancement matters here. They agree that, without the enhancement, Taylor's total offense level would be 19. That total offense level results from a base offense level of 20, under U.S.S.G. § 2K2.1(a)(4)(B), with a two point enhancement because the offense involved three or more firearms, under § 2K2.1(b)(1)(A), and a three point reduction for acceptance of responsibility, under § 3E1.1. The parties also agree that the trafficking enhancement adds four points to the total offense level, U.S.S.G. § 2K2.1(b)(5), so that, with that enhancement, Taylor's total offense level would be 23. And, because the parties further agree that Taylor's criminal history category is III, his sentencing range under the guidelines with the enhancement is for a term of imprisonment of 57-71 months, rather than for the range of 37-46 months that it would be without the trafficking enhancement.

A sentencing hearing was held on June 24, 2015. At that sentencing hearing, the District Court determined that on three

separate occasions -- September 17, 2013; October 1, 2013; and October 16, 2013 -- Taylor supplied firearms to a cooperating witness, CW-1. That finding, the District Court concluded, was sufficient to satisfy subpart (i) of the trafficking enhancement's application note. The District Court then determined that the requirement of subpart (ii) was met because the District Court found that, during the September 17 transaction, CW-1 said to Taylor that CW-1 would remove the serial number from the firearm involved in that transaction. In addition, the District Court found that the requirement of subpart (ii) had been met because the District Court found that, during the October 16 transaction, the gun sold was a sawed-off shotgun, which is generally unlawful to possess except in limited circumstances, and the evidence in the record did not support the contention that Taylor might have believed that those limited circumstances applied to CW-1.

Having found that the trafficking enhancement applied, the District Court sentenced Taylor to a term of imprisonment of 71 months. Taylor now brings this timely appeal to the application of the trafficking enhancement.

## II.

The government bears the burden of showing, by a preponderance of the evidence, that Taylor is subject to the trafficking enhancement. United States v. Marceau, 554 F.3d 24, 32 (1st Cir. 2009). Taylor contends that the District Court erred

in imposing the trafficking enhancement because it erroneously found that, on the basis of the transactions on September 17 and October 16, the requirement in subpart (ii) of application note 13 had been met.  But, because Taylor did not make this challenge below, our review is only for plain error.  United States v. Figuereo, 404 F.3d 537, 540 (1st Cir. 2005).[1]  And, under the plain error standard, we will reverse "only if the defendant shows '(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'"  Id. (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).  We conclude that the District Court did not commit a clear or obvious error in finding that the government met its burden.

As to the September 17 transaction, the District Court found that "the cooperating witness [said] that he [was] going to take the serial number off" and that therefore "Mr. Taylor as a supplier would know [that the transfer] involved some unlawful possession or the use or disposal of the firearm unlawfully." Taylor contends that the District Court erred in finding that the government met its burden, given that the audio recording of the

---

[1]  Although Taylor did raise other objections to the application of the sentencing enhancement, an objection on one ground does not preserve objections on a different ground.  Id. at 540 n.3.

September 17 transaction shows only that CW-1 announced that he would remove the serial number, not that Taylor heard or acknowledged CW-1's comment.

But, according to the uncontested characterization of the conversation in the presentence report, CW-1 announced to Taylor that he would remove the serial number, and then Taylor, without acknowledging the comment, showed CW-1 how to operate the firearm. In the course of showing CW-1 how to work the firearm, Taylor answered when CW-1 asked about the location of the weapon's safety. In other words, Taylor and CW-1 were in close enough proximity that they could engage in conversation and Taylor could hear CW-1's question. Given that characterization of what transpired during the transaction, the District Court supportably found that Taylor heard the statement that CW-1 made during a conversation between the two of them about the firearm. And, if Taylor heard the statement, then the District Court committed no clear or obvious error -- or, for that matter, any error at all -- in concluding that Taylor knew or should have known that the removal of a serial number is indicative of "anticipation that the gun will be used in criminal activity," and thus that Taylor knew or should have known that CW-1 intended to use or dispose of the firearm unlawfully. Marceau, 554 F.3d at 32 (quoting United States v. Ortiz, 64 F.3d 18, 22 (1st Cir. 1995)); see also United States v. Jenkins, 528 F. App'x 483, 486 (6th Cir. 2013) (finding that a

firearm's lack of serial number supported the inference that the defendant knew or had reason to believe that the firearm would be used or disposed of unlawfully).

As for the District Court's finding that the October 16 transaction supplies a basis for finding that the requirement in subpart (ii) of application note 13 had been met, here, too, we see no clear or obvious error. The District Court noted that, while it is "conceivable[] for someone to possess a sawed-off shotgun legally . . . it would require, broadly stated, licensing that is not to be found in this record," and concluded that Taylor knew or had reason to believe that CW-1 would use or dispose of the firearm unlawfully. And much evidence supports that conclusion.

The October sale took place in a private home, not a gun store. It also was made in cash. Moreover, Taylor was selling CW-1 a sawed-off shotgun, which is illegal to possess in all but the most unusual circumstances, and there were no facts to indicate that such circumstances were present here. In addition, Taylor was on notice that CW-1 planned to resell the weapons that he was purchasing from Taylor, and there was no indication that CW-1 would be the unusual firearms dealer who could legally own, much less legally resell, a sawed-off shotgun. Finally, Taylor was on notice that CW-1 had expressed during the September transaction an intention to remove the serial number from a firearm.

Combining all the facts together, we find that the District Court did not plainly err in concluding that Taylor "knew or had reason to believe" that CW-1 would "use or dispose of" the sawed-off shotgun illegally.  See Jenkins, 528 F. App'x at 486.  We therefore find that the District Court did not plainly err in finding that the requirement of subpart (ii) of application note 13 had been met and that the trafficking enhancement applied.

## III.

We **affirm** the sentence set by the District Court.