NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0471n.06

No. 24-4102

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Oct 16, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | )  ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| ELIAS PAGAN, | ) |
| Defendant-Appellant. | ) |
| | )  OPINION |

Before: READLER, MURPHY, and BLOOMEKATZ, Circuit Judges.

MURPHY, Circuit Judge. Elias Pagan sold crack cocaine and firearms to an undercover officer. He pleaded guilty to drug and firearm offenses. At sentencing, the district court imposed a gun-trafficking enhancement because it found that Pagan had "reason to believe" that the undercover officer would use the weapons unlawfully. U.S.S.G. § 2K2.1 cmt. n.13(A)(ii) (2021). Pagan challenges this conclusion. He also argues that the district court engaged in improper "double counting" by applying this enhancement along with another one tied to the number of firearms involved in his crimes. But Pagan knew of several facts suggesting that the undercover officer planned to put the firearms to illicit purposes. And this enhancement applied because of an aspect of Pagan's crime distinct from the quantity of firearms involved. We thus affirm.

I

In early 2023, Angel Santiago came to the attention of law enforcement in Cleveland, Ohio. On May 30 of that year, an undercover agent set up a drug transaction with Santiago. While meeting this agent at the designated place, Santiago called Pagan to obtain the drugs. Later that

day, Pagan sold the agent some 29 grams of crack cocaine for $1,000. During this exchange, the agent asked Pagan if he sold firearms too. Pagan answered in the affirmative.

The undercover agent and Pagan exchanged more crack cocaine on June 6. Pagan sold the agent about 25 grams for $900. The agent also asked about firearms again. Pagan responded that he had "multiple sources of firearms" and could also make them "on a 3D printer." Rep., R.76, PageID 421.

On June 12, Pagan met the undercover agent for a third time after a confidential informant arranged a firearms transaction. The agent agreed to buy a Taurus revolver for $600 and a Springfield pistol for $1,200. The revolver had six rounds of ammunition, and the pistol had an extended magazine with 29 rounds. As the parties exchanged these weapons in the agent's vehicle, the agent asked Pagan if he also sold illegal "switches" that turned semiautomatic weapons into fully automatic ones. Pagan said he would speak to his supplier about them. Pagan also offered to sell the agent about 29 grams of crack cocaine for $800. The agent agreed. When Pagan left to get these drugs, the agent placed the two firearms in a hidden compartment in the car. The agent showed this secret compartment to Pagan after he returned with the drugs. They then completed the drug deal.

Two days later, the confidential informant set up a second firearms deal between Pagan and the undercover agent. Pagan sold the agent three firearms for a total of $2,200. The agent obtained a shotgun with 23 shotgun shells, a Smith & Wesson pistol with 11 rounds, and a Glock pistol with 21 rounds.

A short time later, the government charged Pagan with a mix of drug and firearm offenses. It charged him with three counts of distributing cocaine for the drug deals on May 30, June 6, and June 12. *See* 21 U.S.C. § 841(a)(1), (b)(1)(C). It charged him with one count of engaging in the

business of firearms dealing without a license for the gun transactions on June 12 and 14. *See* 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D). And it charged him with two counts of possessing a firearm as a felon for those transactions. *See id.* §§ 922(g)(1), 924(a)(8).

Pagan pleaded guilty to all six counts in a written plea agreement. The agreement made clear that the government might ask the district court to impose a then-existing four-level enhancement for firearms trafficking. *See* U.S.S.G. § 2K2.1(b)(5) (2021). This enhancement applied if a defendant transferred at least two firearms to a person and the defendant had reason to believe that this person could not lawfully possess the firearms or planned to use them unlawfully. *See id.* § 2K2.1, cmt. n.13(A)(i)–(ii). Pagan's presentence report later recommended this enhancement. But he objected on the ground that he had no reason to believe that the undercover agent could not possess the five firearms or would use them unlawfully.

At sentencing, the district court overruled Pagan's objection. It found that the undisputed facts would have given Pagan reason to believe that the firearms "would be used or disposed of unlawfully." Sent. Tr., R.84, PageID 499. The court also rejected Pagan's separate claim that it would engage in improper "double counting" if it applied this enhancement along with another one. *Id.*, PageID 501. The enhancement triggered a guidelines range of 121 to 151 months' imprisonment. But the court chose to vary downward. It imposed a 100-month sentence.

II

On appeal, Pagan raises two challenges to the use of the trafficking enhancement. He argues that his gun sales to the undercover agent did not justify the enhancement on its own terms. And even if the enhancement could apply, he adds that the court still should not have used it because the enhancement punished him twice for the same thing. Neither argument persuades.

3

*Trafficking Enhancement*. The version of the guidelines applicable to Pagan told the district court to increase his offense level by four if he "engaged in the trafficking of firearms[.]" U.S.S.G. § 2K2.1(b)(5) (2021); *cf. United States v. Saine*, 2024 WL 3508691, at *6 n.7 (6th Cir. July 23, 2024). The then-existing commentary (which both parties accept as a permissible reading of the enhancement) clarified that it had two basic requirements. *See* U.S.S.G. § 2K2.1, cmt. n.13(A) (2021). A defendant must have "transported, transferred, or otherwise disposed of two or more firearms to another individual[.]" *Id.* § 2K2.1, cmt. n.13(A)(i). And the defendant must have "kn[own] or had reason to believe" that at least one of these firearms would reach someone "whose possession or receipt of the firearm would be unlawful" or "who intended to use or dispose of the firearm unlawfully." *Id.* § 2K2.1, cmt. n.13(A)(ii). This commentary further adopted a narrow definition of the following phrase: "[i]ndividual whose possession or receipt of the firearm would be unlawful." *Id.* § 2K2.1, cmt. n.13(B). That phrase covered only those who had been convicted of "a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence" or who were "under a criminal justice sentence" at the time of their offense. *Id.*

This case raises a narrow challenge about these requirements. Pagan does not dispute that he "transferred" "two or more firearms to another individual[.]" *Id.* § 2K2.1, cmt. n.13(A)(i). And the government makes no claim that Pagan "knew" that this individual could not lawfully possess these firearms or planned to use them illegally. *Id.* § 2K2.1, cmt. n.13(A)(ii). That is for good reason: an undercover law-enforcement officer received the firearms.

This case thus turns on whether Pagan had "reason to believe" that this undercover officer might not be able to lawfully possess the firearms or might use them unlawfully. *Id.* As we have explained in a related context, this reason-to-believe phrase demands no more than what courts have required when asking whether the police had "probable cause" to search or seize someone.

4

*United States v. McKenzie*, 33 F.4th 343, 347–49 (6th Cir. 2022). The test does not set a "high bar." *Id.* at 349 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). At most, the defendant must have known facts that "create a 'fair probability' that" an individual receiving the firearms could not lawfully possess them or would use them illegally. *Id.* (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)). So the enhancement can apply even when a defendant sells firearms to an undercover agent as long as the defendant learns facts suggesting that the agent could not lawfully possess the firearms or would use them unlawfully. *See United States v. Pawlak*, 822 F.3d 902, 912–13 (6th Cir. 2016), *abrogated on other grounds by Beckles v. United States*, 580 U.S. 256 (2017); *United States v. Henry*, 819 F.3d 856, 870 (6th Cir. 2016).

A few examples illustrate this test in practice. We have held that a defendant had reason to believe that an individual would use firearms unlawfully when the defendant sold the firearms to his drug dealer, who planned to use the firearms to protect himself. *United States v. Lumpkin*, 751 F. App'x 894, 896 (6th Cir. 2019); *see also United States v. Torres*, 644 F. App'x 663, 667–68 (6th Cir. 2016); *United States v. Freeman*, 640 F.3d 180, 189 (6th Cir. 2011). Likewise, we have held that a defendant had reason to believe that individuals would use guns illegally because they suggested that they would accept "stolen or otherwise 'dirty'" firearms and because the defendant offered to sell them drugs in addition to guns. *United States v. Turner*, 698 F. App'x 803, 806–07 (6th Cir. 2017). And we have held that a defendant had reason to believe that an individual would use the firearms illegally when the defendant sold the individual a firearm lacking a "serial number" and an "illegal, sawed-off shotgun" and explained how to convert other weapons into illegal ones. *See United States v. Jenkins*, 528 F. App'x 483, 486 (6th Cir. 2013).

Did Pagan also learn enough facts to establish a "reason to believe" that the undercover agent here could not lawfully possess the guns or would use them unlawfully? U.S.S.G. § 2K2.1, cmt. n.13(A)(ii) (2021). Our answer must start with "a standard-of-review question." *McKenzie*, 33 F.4th at 350. The parties do not dispute any of the historical facts. Rather, they disagree on the question whether these undisputed facts created the required "reason to believe." Our cases have sometimes answered this "mixed" question under a de novo standard and sometimes under a deferential one. *Compare Pawlak*, 822 F.3d at 911, *with Freeman*, 640 F.3d at 190. We need not reconcile this caselaw here because Pagan's claim fails either way. *Cf. McKenzie*, 33 F.4th at 350.

This case resembles those that have upheld the use of the enhancement. As a "big-picture" matter, Pagan knew that the undercover agent suspiciously sought to buy firearms from an unlawful dealer rather than a licensed one. *Id.*; *see Pawlak*, 822 F.3d at 912. After all, Pagan pleaded guilty to engaging in an illegal firearms business. *See* 18 U.S.C. § 922(a)(1)(A). Next, the agent made a "red flag" remark to Pagan. *McKenzie*, 33 F.4th at 351. He asked Pagan whether Pagan sold illegal "switches" that could turn lawful firearms into unlawful ones. So Pagan objectively should have known that the agent had an interest in obtaining illegal weapons. *Cf. Jenkins*, 528 F. App'x at 486. After Pagan sold the first two guns to the agent, moreover, he saw the agent place them in a secret compartment in his car. This "hidden" compartment (when combined with a "parked car dealing[]") should have further confirmed to Pagan that the agent likely did not plan to use the firearms lawfully. *Turner*, 698 F. App'x at 806–07. Pagan also knew that the officer had repeatedly bought illegal drugs from him, showing that the agent engaged in illegal activity. *Cf. id.* at 806.

In response, Pagan tries to explain away the suspicious circumstances. He notes that it is not illegal to have a "hidden compartment" in a car. Appellant's Br. 26. He also suggests that he

might not have known that switches are illegal. *Id.* And he adds that the agent never said what he planned to do with the guns. *Id.* at 25–26. But the facts can still satisfy the reason-to-believe test even if defendants can come up with an "innocent explanation" for their conduct. *McKenzie*, 33 F.4th at 351–52 (quoting *Wesby*, 583 U.S. at 61). That test requires only a "fair probability" (not an absolute certainty) that the buyer will use the guns illegally. *Id.* at 349 (citation omitted).

Pagan next criticizes the district court for applying a "reasonable person" standard instead of one that asked about Pagan's own knowledge. Appellant's Br. 24. Yet the enhancement applies either if Pagan "knew" that the individual would use the weapons illegally or if he had "reason to believe" that the individual would do so. U.S.S.G. § 2K2.1, cmt. n.13(A)(ii) (2021). The reason-to-believe part of this test (in contrast to the knowledge part) shows that the enhancement can apply even if Pagan did not *subjectively* believe that the officer would illegally use the guns. *See McKenzie*, 33 F.4th at 348. The reason-to-believe test (like probable cause more generally) establishes an *objective* (reasonable-person) standard. *See Wesby*, 583 U.S. at 54 n.2, 56–57.

Pagan lastly points to out-of-circuit precedent. The Seventh Circuit has suggested that the enhancement does not categorically apply every time that buyers want to engage in "off-the-book gun sales" because that fact alone reveals only illegal purchases. *United States v. Moody*, 915 F.3d 425, 430 (7th Cir. 2019) (Barrett, J.); *see also United States v. Harris*, 719 F. App'x 946, 950 (11th Cir. 2018) (per curiam). But Pagan's case involved much more than those types of sales. His buyer had also expressed interest in buying illegal switches, purchased illegal drugs, and hid the guns in a secret compartment. Similarly, the Fifth Circuit has suggested that the enhancement cannot apply when the "record is silent" about the underlying facts that the defendant knew. *United States v. Green*, 360 F. App'x 521, 525 (5th Cir. 2010) (per curiam). But this case does not have a similar problem: the parties agree on the historical facts that Pagan knew. And those

facts created the required likelihood that the agent might use the guns for illegal purposes. So the district court properly applied the trafficking enhancement.

*Double Counting*. Alternatively, Pagan argues that the district court should not have applied the trafficking enhancement under our "double counting" precedent. That precedent sometimes prohibits a district court from using two enhancements that would otherwise apply if they both punish the defendant for the same aspect of the crime. *See United States v. Duke*, 870 F.3d 397, 404 (6th Cir. 2017). When faced with a double-counting claim, we must ask two questions. Did "double counting" occur? *See United States v. Rupp*, 2023 WL 370908, at *5 (6th Cir. Jan. 24, 2023). If so, do the guidelines authorize the double counting? *See id.*

We need not proceed past the first question here. A court does not engage in double counting if two enhancements punish a defendant for "distinct aspects" of the defendant's criminal activities. *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010). And here, Pagan received all his enhancements for distinct parts of his crimes. Start with his base offense of 22. This level applied because Pagan sold semiautomatic firearms capable of accepting large-capacity magazines and because he had a prior controlled-substance conviction. *See* U.S.S.G. § 2K2.1(a)(3). These reasons for his enhanced base offense level were "distinct" from the underlying reason for the trafficking enhancement: that he sold firearms to an individual who might use them unlawfully. *Battaglia*, 624 F.3d at 351.

Turn to Pagan's two-level enhancement for selling between three and seven firearms. *See* U.S.S.G. § 2K2.1(b)(1)(A). This enhancement targeted the high *quantity* of firearms that Pagan sold. *See Saine*, 2024 WL 3508691, at *7. That quantity rationale also differs from the rationale for the trafficking enhancement. Indeed, § 2K2.1(b)(1)(A) would have covered Pagan even if he

sold the firearms to someone who would not have used them unlawfully and who could lawfully possess them. *See Saine*, 2024 WL 3508691, at *7. So no double counting occurred.

We affirm.